# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-3060

MICHAEL H. JONES, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 21, 2009)                    Decided   March 25, 2010)

*Matthew Schmitten* and *Kathy Lieberman*, with whom *Sean A. Ravin* was on the brief, all of Washington, D.C., for the appellant.

*Justin McNabb* and *Joan E. Moriarty*, Deputy Assistant General Counsel, with whom *Joan E. Moriarty* and *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Tamika J. Springs*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and DAVIS, *Judges*.

DAVIS, *Judge*, filed the opinion of the Court.  LANCE, *Judge,* filed a concurring opinion.

DAVIS, *Judge*:  U.S. Marine Corps veteran Michael H. Jones appeals through counsel from that portion of a September 28, 2007, Board of Veterans' Appeals (Board) decision that denied an initial compensable rating for right ear hearing loss, and entitlement to service connection for left ear hearing loss and for erectile dysfunction claimed as secondary to the appellant's service-connected Type II diabetes mellitus. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688 n.3 (Fed. Cir. 2000) (Court would only address challenges that were briefed).  The principal issue before the Court is whether VA fulfilled its duty to assist by obtaining two VA medical examinations in which the examiners concluded that they were unable to render an opinion whether there was a causal link between service and the appellant's current disabilities without resort "to mere

speculation." Record (R.) at 229, 417. This Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will set aside the Board's September 2007 decision insofar as it pertains to the claims for bilateral hearing loss and erectile dysfunction and remand those matters for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty from February 1964 to January 1967, including service in Vietnam. His entrance examination noted that both his ears and his genitourinary system were normal. His separation examination stated that his ears appeared normal and noted that he achieved a score of 15/15 for both ears in the whispered voice and spoken voice tests. There is no indication that he claimed any hearing difficulties on separation.

In October 2002 the appellant filed an application for service connection for multiple medical problems, including bilateral hearing loss and "busted ear drums." R. at 45. He has consistently asserted that his hearing problems derive from exposure to small arms, mortar, and artillery fire during service. A resultant rating decision granted service connection for diabetes, but denied service connection for all other claims, including the hearing claims. A series of disagreements, appeals, and subsequent actions by the Secretary and the Board eventuated in grants of service connection for disabilities of the right ear: Hearing loss, cholesteatoma, and perforated tympanic membrane, all rated at a noncompensable level.

On August 30, 2006, the appellant called VA to "request service connection for erectile dysfunction due to medication he is taking for his service[-]connected diabetes." R. at 264. An October 2006 rating decision denied that claim and the appellant initiated an appeal, which he later perfected after issuance of a Statement of the Case (SOC).

In the course of his appeals, the appellant underwent two VA examinations, both of which resulted in reports that were inconclusive as to the etiology of the claimed conditions. In an audiology examination on May 11, 2006, the VA examiner recorded test results for both ears that the Board acknowledged would constitute a disability under applicable regulations if the disabilities were service connected. *See* R. at 5, 10, 230; 38 C.F.R. § 3.385 (2009). The examiner opined that the appellant's right ear hearing loss was directly related to his service-connected cholesteatoma and

2

perforated tympanic membrane. As to the etiology of the left ear hearing loss, however, the examiner stated that "[there] is insufficient information to resolve the etiology and onset of the left ear hearing loss without resorting to mere speculation." R. at 232.

In response to questions from the VA regional office (RO), the examiner further considered reported symptoms of tinnitus. The examiner stated that "[o]nset is currently reported as 1965," but further remarked that "[d]uring interview in 2001 for [Compensation and Pension (C & P)], veteran reported that he had had the tinnitus for as long as he could remember. In 2001, veteran did not relate onset of tinnitus as secondary to acoustic trauma, ear injury or ear disease." R. at 229. The examiner concluded that "[w]ith two different accounts of onset, it is not possible to resolve[] the issue of etiology [of tinnitus] without resort to speculation." *Id.* The examiner nevertheless stated that "[t]he [left ear] hearing loss and tinnitus are more likely than not related to one or more common factors." *Id.*

Another VA medical examiner conducted a genitourinary examination in January 2007. The examiner diagnosed erectile dysfunction but similarly stated: "I cannot resolve [the etiology] issue without resort to mere speculation." R. at 417.

In the decision here on appeal, the Board found that the left ear hearing loss was not etiologically related to service and that the erectile dysfunction was not due to or the result of the appellant's service-connected diabetes. The Board noted that the earliest evidence of the left ear hearing disability is dated decades after the appellant's separation from service and "there is no contemporaneous documentation of symptomatology between the time of service and these initial findings." R. at 6. The Board further stated that "there is no medical evidence establishing that [the erectile dysfunction] is proximately due to or the result of service-connected diabetes." R. at 7. In both instances, the Board noted the inability of the VA medical examiners to opine on the etiology issue without resort to speculation. This appeal followed.

## II. CONTENTIONS OF THE PARTIES

### A. The Appellant

The appellant asserts that VA has not fulfilled its duty to assist in providing a medical examination when the examination report fails to proffer an opinion on the etiology of a disability.

3

He notes that the applicable statute requires VA to obtain a medical opinion when, among other things, "the evidence of record before the Secretary . . . does not contain sufficient medical evidence for the Secretary to make a decision on the claim." 38 U.S.C. § 5103A(d)(2).

The appellant argues that an inconclusive medical opinion does not improve the state of the medical evidence. He reasons that the statute continues to require a medical opinion to enable the Secretary to make a decision on the claim. In his brief, he asserts that an inconclusive medical opinion constitutes "nonevidence." *See Perman v. Brown*, 5 Vet.App. 237, 241 (1993). At oral argument he modified his position in accord with the recent opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Fagan v. Shinseki*, 573 F.3d 1282 (Fed. Cir. 2009). In *Fagan*, the Federal Circuit, while expressing some reservations about the term "nonevidence," explained that "[t]he examiner's statement, which recites the inability to come to an opinion, provides neither positive nor negative support for service connection. Therefore, it is not pertinent evidence, one way or the other, regarding service connection." *Id.* at 1289 (citation omitted). Thus, while the appellant acknowledges that the inconclusive examination reports constitute evidence, he maintains that this evidence is not probative of the medical nexus issue.

The appellant argues that the statute requires VA to seek additional opinions until one of two things occurs. Either VA must obtain an opinion that takes a definitive position on the etiology question, he reasons, or else the Secretary must formally conclude that no further examinations should be undertaken because "no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C. § 5103A(a)(2).

The appellant makes additional subsidiary points. He argues, with respect to both medical opinions, that simply stating there is a lack of information does not indicate what types of information might be missing or whether such information could be reasonably obtained. He argues that the Board's statement of reasons or bases is rendered inadequate by its reliance on the inconclusive medical examination reports. He notes that VA failed to comply with the Board's remand order to issue a Statement of the Case (SOC) with respect to the right ear hearing claim. *See Stegall v. West*, 11 Vet.App. 268 (1998). He further argues that the claim for right ear hearing disability is inextricably intertwined with the claim for the left ear hearing disability and the Court should therefore remand the two claims together.

4

B.  The Secretary

The Secretary asserts that both medical examinations were adequate because they described the appellant's disabilities in sufficient detail so that the Board's evaluation was sufficiently informed.  Citing *Bloom v. West*, 12 Vet.App. 185, 187 (1999), the Secretary argues that a medical expert should not speculate on the etiology of a disability where the record is insufficient to reach a definite conclusion.

He distinguishes *Perman* on the basis that in this case the Board did not give probative weight to the VA examiner's opinions.  Unlike the Board in *Perman*, the Secretary reasons, the Board in this case did not give preferential weight to an inconclusive VA examination over etiology evidence favorable to the claimant.  Rather, the Board denied the claims in the absence of any medical nexus evidence.        The Secretary cites *Roberts v. West*, 13 Vet.App. 185, 189 (1999), for the proposition that "[t]he fact that [a] medical opinion is inconclusive . . . does not mean that the examination was inadequate."  At oral argument the Secretary noted that the Court has cited this passage some 17 times in single-judge decisions and urges the Court to formally endorse the *Roberts* reasoning in this precedential decision.  For the foregoing reasons, the Secretary urges that the Board's statement of reasons or bases is adequate with respect to both the left ear hearing loss and erectile dysfunction.

The Secretary does not dispute the appellant's arguments on the balance of the subsidiary points.  He agrees that remand is necessary to obtain an SOC on the right ear disability in compliance with the Board's remand order.  At oral argument the Secretary had no response on the question whether the left and right ear disabilities are inextricably intertwined.

**III.  ANALYSIS**

As explained below, the Court is not persuaded by the appellant's argument that VA must proceed through multiple iterations of repetitive medical examinations until it obtains a conclusive opinion or formally declares that further examinations would be futile.  Nevertheless, it must be clear, from some combination of the examiner's opinion and Board's analysis of the record, that the examiner has not invoked the phrase "without resort to mere speculation" as a substitute for the full consideration of all pertinent and available medical facts to which a claimant is entitled.

A.  The Duty To Furnish Medical Examinations

In disability compensation claims, the Secretary must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies; and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability; but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim.  *See* 38 U.S.C. § 5103A(d)(2); *see also McLendon v. Nicholson*, 20 Vet.App. 79, 81 (2006).

Of particular significance to the matters at hand, the *McLendon* Court stated that "when a nexus between a current disability and an in-service event is 'indicated,' there must be a medical opinion that provides some *nonspeculative* determination as to the *degree of likelihood* that a disability was caused by an in-service disease or incident to constitute sufficient medical evidence on which the Board can render a decision with regard to nexus." *Id.* at 85 (emphasis added).   The Court also noted that medical evidence that is too speculative to establish nexus is also insufficient to establish a lack of nexus; a VA medical examination must be undertaken to resolve the nexus issue.  *Id.* (citing *Forshey v. Principi*, 284 F.3d 1335, 1363 (Fed. Cir. 2002) (Mayer, C.J., and Newman, J., dissenting) ("The absence of actual evidence is not substantive 'negative evidence'").

These passages in *McLendon* set up the question that confronts the Court in this case.  The appellant testifies that he was exposed to artillery and small arms fire in service that affected his hearing in both ears and that his erectile dysfunction is a reaction to medication taken for his service-connected Type II diabetes. VA provided medical examinations to address whether these conditions are more likely than not related to service.  Rather than providing a "nonspeculative determination of the degree of likelihood," however, the examiners concluded that it would be speculation to offer such an opinion.

It should be noted that both *McLendon* and the applicable statutes require some assessment of probability, as opposed to a definitive statement of the cause of the disabilities.  *See* 38 U.S.C. § 5107(b); *McLendon*, 20 Vet.App. at 85; *Gilbert v. Derwinski*, 1 Vet.App. 49, 55 (1990) (veteran prevails when evidence supports claim or is in relative equipoise).  If the physician is able to state

6

that a link between a disability and an in-service injury or disease is "less likely than not," or "at least as likely as not," he or she can and should give that opinion; there is no need to eliminate all lesser probabilities or ascertain greater probabilities.[1] Nevertheless, the Court's precedent does not indicate what the Board must do if the medical examination report states that it cannot give such an assessment without resort to speculation.

### B. The Need To Exhaustively Search for Relevant Information

This Court's precedent establishes that the duty to assist requires VA to obtain all relevant information that may reasonably be obtained before the Board may rely on a VA medical examiner's opinion to deny a claim. The cases discussed below hold that where an examiner specifically identifies additional information that would facilitate a more conclusive opinion, the duty to assist requires that VA at least investigate the feasibility of providing that information.

In *Green v. Derwinski*, 1 Vet.App. 121 (1991), a VA medical examiner equivocated on whether a claimant's current neuromuscular difficulties were residuals of an illness contracted in service and diagnosed at that time as poliomyelitis. After noting some clinical symptoms that were somewhat inconsistent with poliomyelitis, the VA examiner stated that "further review of the veteran's hospital records might 'clarify the diagnostic doubt' and that, if such doubt remains after the record review, 'additional diagnostic studies might be helpful.'" *Id.* at 123. The Court held that it was "impossible to square the Secretary's duty to assist . . . with [VA's] failure to follow up" on the examiner's suggestions. *Id.* The Court remanded "to give the Secretary the opportunity to assist the claimant by gathering additional evidence, including an examination by a physician who has reviewed the claimant's medical records" and address the unresolved issue of whether the appellant's leg disability was linked to the illness in service. *Id.* at 124.

---

[1] In a case involving the Department of Health and Human Services, both the majority and the dissent recognized that the legal standard of evidentiary preponderance is not to be confused with the clinical standard of medical certainty. *See Hodges v. Sec'y. of Dep't. of Health and Human Servs.*, 9 F.3d 958, 961-63 (Fed. Cir. 1993). As one judge noted: "[T]he data may support statistical analysis, whereby although the data may not establish a causal relationship to a medical certainty [which means 95% confidence level, or general acceptance by the medical community], they may nonetheless meet the more-likely-than-not standard of the law." *Id.* at 965 (Newman, J., dissenting). We need not address these issues here, but do note that in the veterans benefits system the benefit of the doubt as to "any issue material to resolution of the claim" goes to the veteran if the evidence is in equipoise, *Anderson v. Brown*, 5 Vet.App. 347 (1993), and the "burden of nonpersuasion" is with VA, *Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2001). *See* 38 U.S.C. § 5107; 38 C.F.R. § 3.102 (2009).

More recently, in *Daves v. Nicholson*, 21 Vet.App. 46 (2007), a medical examiner stated that without an autopsy it was impossible to determine whether the cause of a veteran's death was or was not related to service-connected conditions. As a general principle, the Court stated that "[w]hen the Secretary's duty to provide a medical opinion is triggered, this duty includes the requirement that the Secretary provide reasonable tests and other examinations necessary to render a meaningful medical opinion." *Id.* at 51. The Court elaborated that

> [w]here the medical examiner specifically states that a medical opinion cannot be provided without information not currently available, the Secretary's duty to assist requires that the Secretary determine whether that information may be reasonably obtained, and if so, make efforts to obtain it and seek an additional medical opinion which considers the relevant information.

*Id.*

Further, the *Daves* Court recognized that the examiner's statement was ambiguous. It could be read to mean either that an autopsy at the time of death was needed or that an autopsy conducted in the present could enable an etiology opinion. Because the Board never discussed the need for an autopsy or whether an autopsy after exhumation might be helpful, the Court remanded for further development. Thus, *Daves* stands for the proposition that a VA examiner's ambiguous statement about the need for further information may require clarification and further development.

The appellant raises a new question, however, with which this Court deals today. How should the Court treat a situation in which an examiner's opinion is unclear or silent as to whether all information that reasonably bears on a medical analysis has been gathered or the reasoning behind the inconclusive opinion is absent? Stated another way, how thoroughly must an examiner develop and describe the information gathered and explain the essential medical reasoning before the Board may rely on his or her representation that an opinion cannot be rendered "without resort to mere speculation"? This phrase must not become a mantra that short circuits the careful consideration to which each claimant's case is entitled.

In general, it must be clear on the record that the inability to opine on questions of diagnosis and etiology is not the first impression of an uninformed examiner, but rather an assessment arrived at after all due diligence in seeking relevant medical information that may have bearing on the requested opinion. As the Secretary has acknowledged, this requirement inheres in the statutory equipoise rule as interpreted by the implementing regulation. *See* 38 U.S.C. § 5107(b); 38 C.F.R.

8

§ 3.102 ("When, after careful consideration of all *procurable and assembled data*, a reasonable doubt arises . . . such doubt will be resolved in favor of the claimant." (emphasis added)).

An examiner's conclusion that a diagnosis or etiology opinion is not possible without resort to speculation is a medical conclusion just as much as a firm diagnosis or a conclusive opinion. However, a bald statement that it would be speculative for the examiner to render an opinion as to etiology or diagnosis is fraught with ambiguity. For example, it is not clear whether the examiner lacks the expertise to render such an opinion, or whether some additional testing or information is needed, and possibly available, that would permit such an opinion, either of which would render the opinion inadequate for resolving the claim. *See Daves* and *Green*, both *supra*. Thus, before the Board can rely on an examiner's conclusion that an etiology opinion would be speculative, the examiner must explain the basis for such an opinion or the basis must otherwise be apparent in the Board's review of the evidence. *Cf. Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions").

Furthermore, the Secretary must ensure that any medical opinion, including one that states no conclusion can be reached without resorting to speculation, is "based on sufficient facts or data." *See Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2009). Therefore, it must be clear, from either the examiner's statements or the Board decision, that the examiner has indeed considered "all procurable and assembled data," by obtaining all tests and records that might reasonably illuminate the medical analysis. *See Daves, supra.* When the record leaves this issue in doubt, it is the Board's duty to remand for further development.

The examiner may also have an obligation to conduct research in the medical literature depending on the evidence in the record at the time of examination. *See Wallin v. West*, 11 Vet.App. 509, 514 (1998). The phrase "without resort to speculation" should reflect the limitations of knowledge in the medical community at large and not those of a particular examiner.

Finally, the examiner should clearly identify precisely what facts cannot be determined. For example, it should be clear in the examiner's remarks whether it cannot be determined from current medical knowledge that a specific in-service injury or disease can possibly cause the claimed condition, or that the actual cause cannot be selected from multiple potential causes.

C. Legitimately Inconclusive Opinions

Even when a VA medical examiner has obtained and considered all relevant and available information, there will nevertheless be instances in which the examiner is still unable to furnish the requested opinion. There are limits to even the most current medical knowledge. In certain cases, no medical expert can assess the likelihood that a condition was due to an in-service event or disease, because information that could only have been collected in service, or soon thereafter, is missing, or the time for obtaining other information has passed. Similarly, the valid application of current medical knowledge could yield multiple possible etiologies with none more likely than not the cause of a veteran's disability, such that a physician could only speculate as to the cause of a claimant's disability or condition.

Therefore, it would be inappropriate for VA to demand a conclusive opinion from a physician whose evaluation of the "procurable and assembled" information prevents the rendering of such an opinion. Of course, VA may exercise its discretion to seek a second opinion. *See Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002) (VA has discretion to decide how much development is necessary). When an examiner has done all that reasonably should be done to become informed about a case, however, and the inability to render a requested opinion is adequately explained by the examiner or otherwise apparent in the Board's review of the evidence, there is nothing further to be obtained from that particular examiner.

As stated in *Roberts*, *supra*, an examination is not inadequate merely because the examiner states he or she cannot reach a conclusion without resort to speculation. The Court also rejects the assertion that VA is bound to proceed through multiple iterations of medical opinions until it declares that no further examinations would assist the claimant. In the Court's view, that assessment is inherent in a finding that the duty to assist has been fulfilled. *See Clemons v. Shinseki*, 23 Vet.App. 1, 6 (2009) (Board may be required to obtain further medical evidence "unless the medical evidence itself indicates that determining the cause is speculative").

While VA has a duty to assist the veteran by providing a medical examination in certain situations, that duty does not extend to requiring a VA physician to render an opinion beyond what may reasonably be concluded from the procurable medical evidence. Notwithstanding the duty to assist, it remains the claimant's responsibility to submit evidence to support his claim. *See* 38 U.S.C. § 5107(a); *see also Skoczen v. Shinseki*, 564 F.3d 1319, 1328 (Fed. Cir. 2009) (interpreting

section 5107 and stating that the duty to assist requires VA to bear the "primary responsibility of obtaining the evidence it reasonably can to substantiate a veteran's claim for benefits").

D.  Application to Present Case

*1.  Left Ear Disability and Tinnitus*

In this case, the VA medical examiner for the left ear hearing disability states that "[there] is insufficient information to resolve the etiology and onset of the left ear hearing loss without resort to mere speculation." R. at 232.  This statement partakes of the same sort of ambiguity that the Court recognized in *Daves*.  It is unclear whether the examiner is referring to information that might have been gathered in service or soon thereafter, or further information that could have been obtained at the time of the report.  Moreover, the report contains a notation that "[a] call to the Appeals Management Center was not returned." R. at 228.  The implication is that the examiner may have had an inquiry as to further information that went unanswered.

The examiner's report contains other evidence that the Board overlooked in its decision concerning service connection for the left ear.  Most significantly, the examiner concluded that "[t]he hearing loss and tinnitus are more likely than not related to one or more common factors." R. at 229.  During the examination the appellant stated that the tinnitus began in 1965 in Vietnam. Other lay evidence also connects the appellant's tinnitus to service.  *See* R. at 151 (appellant's letters from service "complained of ringing noises"). The foregoing evidence constitutes a possible link between the appellant's service and his left ear hearing loss that the Board should have discussed.

Further, the examiner perceived a contradiction in the appellant's accounts of the onset of his tinnitus that the examiner linked to his hearing disabilities. The examiner refers to a 2001 C&P interview that the Court has been unable to locate in the record on appeal.  The examiner quotes the appellant as stating in that interview that he has had tinnitus "as long as he can remember." Apparently, the examiner took this statement to mean that the tinnitus preceded service.  Because of the perceived contradiction, the examiner stated that he was also unable to opine on the etiology of the tinnitus without resort to speculation.

The examiner's reasoning sets up a perceived credibility issue that relates to both tinnitus and hearing loss, which is for the Board to resolve.  The examiner's perceived lack of information requires a response by the Board.  *See Daves, supra*.  Moreover, it is unclear from the Board's statement of reasons or bases whether the record and the appellant's initial claim raised the issue of

11

entitlement to benefits for tinnitus. *See Clemons*, 23 Vet.App. at 3 (stating that a claimant has no special medical expertise, but may testify as to symptoms he can observe, and holding that the Board may not deny a claim for benefits based on one condition when the evidence submitted and developed during the processing of the claim showed that the claimant's symptoms emanated from another condition); *see also Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board required to consider all issues raised by the claimant or by evidence of record). Therefore, the Court will remand this matter for the Board to weigh all the evidence of onset of the appellant's tinnitus and make a factfinding, with due regard for the benefit of the doubt provision, as to that matter. *See* 38 U.S.C. § 5107(b).

Thereafter, the Board should return the matter to the examiner for a medical etiology opinion on the tinnitus condition based on the Board's factfinding as to which of the purportedly contradictory accounts the examiner should use as the basis of his opinion. Because the examiner stated that the causal factors of the tinnitus and the hearing disability were as likely as not the same factors, the Court will also remand the left ear hearing disability claim.

### 2. Erectile Dysfunction

In the January 2007 examination for erectile dysfunction, the examiner merely stated that "I cannot resolve this issue without resort to mere speculation." R. at 417. In this instance, the examiner did not comment on the adequacy of information at all. The examiner, however, gave an explanation of the reasons for his opinion:

> RATIONALE FOR OPINION GIVEN: [diagnosed] with [Type II diabetes in] 2001, treated with lifestyle changes only until 2002. Placed on single oral agent with adequate control evidenced by HgA1-C in the 6 range since 2002. Recent rise in Glucose levels and HgA1-C=7.5 with [prescription] new medication 12-06. [Erectile dysfunction symptoms] began gradually in 2006. No effect from [treatment]. Pedal pulses normal, [genitourinary] exam normal, [e]ye exam [negative] for [diabetic] [retinopathy], [n]o complaints of other peripheral [n]europathy [symptoms], hands or feet.

*Id.* This explanation, which contains internal inconsistencies, falls short of setting forth any clear conclusions, much less articulating a reasoned explanation of the conclusion that no opinion is possible without resort to speculation.

The examiner does not indicate whether there is further testing that might shed light on the etiology issue; he merely cites the results of the tests he conducted. He does not state whether further

information might be helpful or what that information might be. The Court cannot discern whether the examiner's conclusion that he cannot assess the etiology of the appellant's condition "without resort to mere speculation" signals that he needs additional information or that he has exhausted the limits of current medical knowledge as to what may be causing the erectile dysfunction.

Further, the Court notes with concern that the above-quoted paragraph is both cryptic and unclear, even in view of the balance of the report. Although the report is dated January 12, 2007, the portion of the form that reads "Examined on:" is blank and there is scant indication on the face of the report when the reported tests might have been conducted. The Court notes that elsewhere the report indicates a test result as follows: "HgA1-C=7.5 12-06" (R. at 416), indicating that this test, and perhaps the other reported tests, were performed in December 2006. Thus, the sentence set forth above that reads "[r]ecent rise in Glucose levels and HgA1-C=7.5 with Rx new medication 12-06" is ambiguous. It is unclear whether the examiner is indicating that new medication was prescribed in December 2006 or merely that the elevated glucose levels were recorded in December 2006 after a prescription was changed at some earlier date.

Nor is it clear that the examiner eliminated a medication for diabetes as a causative factor, which has been the appellant's contention from the beginning. The report lists three medications: "Vardenafil 10 PRN for ED Glyburide 10 mg BID and Metformin 1000 mg BID for DM II." R. at 413. There is structural ambiguity in this passage; the appellant's current prescriptions include one medication for erectile dysfunction and at least one, perhaps two, medications for Type II diabetes. There is no indication in the report when each of these drugs was initially prescribed, however, and the examiner's remarks shed no light on this matter.[2] This omission leaves open the possibility that a change in the appellant's diabetes medicine could have resulted in an increase in blood sugar and a contemporaneous onset of erectile dysfunction. The examiner's remark, "no effect from Tx," is also ambiguous. It may indicate only that the medication for erectile dysfunction, which may have been prescribed initially in August 2006, did not affect that condition. Alternatively, it could

---

[2]There is another passage that may indicate that the medication for erectile dysfunction may have been initiated in August 2006. After noting that the onset of the problem was in June 2006, the report reads: "Gradual onset of lack of stiffness with erections. No Tx until began medication 8-06. No effect from Tx." R. at 413. The fact that the appellant telephoned the RO on August 30, 2006, to initiate his erectile dysfunction claim, would be consistent with this reading. Nevertheless, the Court should not have to speculate on these dates.

indicate that the examiner concluded that none of the appellant's medications had any effect to cause his erectile dysfunction.

Even if the appellant was taking only the diabetes medication first prescribed in 2002 at the onset of his erectile dysfunction, the examiner has given no explanation why this fact would preclude that medication as a causative factor. There are cumulative effects of extended use of medication and a person's physiology may change over a four-year period.

The opinion does note that there is an absence of other symptoms that would indicate a flareup of the appellant's diabetes (normal pedal pulses, no diabetic retinopathy or peripheral neuropathy in his hands and feet). The examiner, however, has given no explanation to indicate that the absence of such accompanying symptoms precludes either his diabetes, or the effects of the medication for that condition, as causative factors for his erectile dysfunction. There is also no discussion as to why the likelihood of a link between the appellant's diabetes and erectile dysfunction could not be assessed without resort to speculation.

Further, the Board's discussion does not clarify the situation; it merely reiterates the examiner's findings and rationale without further elaboration. Therefore, the Court holds that the Board erred in accepting the examiner's inconclusive opinion. The Board should have remanded for clarification and perhaps for further medical opinions. The Court will now remand the service-connection claim for erectile dysfunction for further development.

### E. Additional Arguments

Because the Secretary concedes that VA should issue an SOC pertaining to the right ear hearing disability, the Court also remands the matter for that purpose. In view of the Board's explanation of the rating for the right-ear disability, it is not clear how the absence of the SOC prejudiced the appellant. Nevertheless, the appellant had a right to substantial compliance with the Board's remand order. *See Stegall, supra; see also Dyment v. West*, 13 Vet.App. 141, 146-47 (1999) (requiring substantial compliance with a remand order).

The appellant further argues that the left and right ear disabilities are inextricably intertwined. Because the Court is remanding the left ear disability claim on another basis, we do not reach this issue.

14

## IV. CONCLUSION

Based on the foregoing reasoning, the Court SETS ASIDE the Board's September 28, 2007, denial of service connection for the appellant's left ear hearing disability; SETS ASIDE its finding that the appellant's erectile dysfunction is not due to or the result of his service-connected diabetes; SETS ASIDE its determination that the criteria for an initial compensable rating for the appellant's service-connected right-ear hearing loss have not been met; and REMANDS these matters for further development consistent with this decision.

LANCE, *Judge*, concurring:

Although I concur in the results reached by the opinion, I write separately to clarify the point that if the medical evidence in the record indicates that a disability has only two potential causes and at least one is related to service, then the inability of the medical examiner to provide a reason why one is more likely the cause of the claimant's disability would place the evidence in equipoise, and the benefit of the doubt rule would apply. *Gilbert v. Derwinski*, 1 Vet.App. 49, 55-56 (1990). That is why it is vital that a physician be clear as to precisely what conclusion cannot be reached without resorting to speculation and why the Court reaches the outcome it does in this case.