Citation Nr: 1220793 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-02 995 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Whether new and material evidence has been received to reopen a claim for service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The appellant and a relative



ATTORNEY FOR THE BOARD

D.S. Lee, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1954 to August 1975, to include service in the Republic of Vietnam. The appellant is the Veteran's surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision, which was mailed to the appellant in June 2008, by the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. A timely notice of disagreement (NOD) was received from the appellant in July 2008. After a statement of the case (SOC) was issued in December 2008, the appellant perfected her appeal by filing a substantive appeal, via VA Form 9, in January 2009.

The appellant and her niece's husband testified at an August 2011 Board hearing which was held before the undersigned Veterans Law Judge at the Oakland RO. A transcript of those proceedings is associated with the claims file.

In December 2011, the Board referred this matter for a claims file review and opinion by an independent medical expert. Such review and opinion has been obtained, and a February 2012 report from the independent medical expert has also been associated with the claims file. This matter now returns to the Board for its de novo appellate consideration.



FINDINGS OF FACT

1. An April 1999 Board decision denied the appellant's claim for service connection for the cause of the Veteran's death; the appellant did not subsequently seek appeal of that decision.

2. The Board received the appellant's current request to reopen her claim for service connection for the cause of the Veteran's death in January 2008.

3. The evidence associated with the claims file since the April 1999 Board decision, when considered with the evidence previously of record, relates directly to previously unestablished elements of the appellant's claim for service connection for the cause of the Veteran's death, and moreover, raises reasonable possibility of substantiating the appellant's claim.

4. The appellant is the Veteran's surviving spouse.

5. The Veteran died on May [redacted], 1992 and the cause of his death was sepsis due to acute myelogenous leukemia (AML).

6. At the time of his death, service-connection was in effect for the Veteran for bilateral ureteralithiasis with urethral colic; deviated nasal septum; hemorrhoids; right knee torn medial meniscus with degenerative changes; and left clavicle fracture.

7. The Veteran's service treatment records show that the Veteran served in the Republic of Vietnam in 1968, and as such, he was presumable exposed to herbicides.

8. The cause of the Veteran's death has not been shown to be etiologically related to the Veteran's service-connected disabilities, presumed herbicide exposure, or to any other injury or illness incurred during his active duty service and may not be presumed to have been.


CONCLUSIONS OF LAW

1. The additional evidence associated with the claims file since the January 1998 Board decision is new and material, and the appellant's claim for service connection for the cause of the Veteran's death is reopened. 38 U.S.C.A. § 5108 (West 2002 & Supp. 2011); 38 C.F.R. § 3.156(a) (2011).

2. The criteria for service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1310, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.310, 3.312 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011) and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

VA's notice requirements apply to all five elements of a service-connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the initial unfavorable decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Insofar as the appellant's request to reopen her claim for service connection for the cause of the Veteran's death, given the favorable action taken below with regard to the Veteran's request to reopen his claims, no further notification or assistance in developing the facts pertinent to that limited matter is required at this time.

Insofar as the substantive issue of the appellant's entitlement to service connection for the cause of the Veteran's death, in addition to the notice requirements outlined above, the Board has also considered the holding of the United States Court of Appeals for Veterans Claims (Court) in Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007). In this decision, the Court determined that notification in such cases must include: (1) a statement of the conditions, if any, for which a veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a dependency and indemnity compensation (DIC) claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. Id.

In the present case, the appellant was provided a February 2008 letter which notified her of the information and evidence needed to substantiate and complete her claim. The Board notes, however, that the February 2008 letter failed to provide the appellant with a statement of the disabilities for which service connection was in effect at the time of the Veteran's death. To that extent, the February 2008 notice letter to the appellant is deficient. Such notice error is presumed to be prejudicial, and it is VA's burden to rebut the presumption. Sanders v. Nicholson, 487 F.3d 881, 891 (Fed. Cir. 2007). Despite this notice error, however, the Board finds that the appellant already had knowledge of the Veteran's service-connected disabilities before she filed her January 2008 request to reopen her claim for service connection for the cause of the Veteran's death. In this regard, the Board notes that a complete listing of the Veteran's service-connected disabilities was provided to the appellant in the Board's prior and final April 1999 decision. As the appellant may be charged with having such knowledge, VA's failure to identify the Veteran's service-connected disabilities in its February 2008 notice letter is not prejudicial to the appellant.

In addition, VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate a claim. The Veteran's service treatment records, identified and relevant post-service treatment records, death certificate, July 1992 autopsy report, July 1998 VA expert opinion, August 2011 Board hearing transcript, and February 2012 independent medical expert opinion have been obtained.

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

II. New and Material Evidence

Generally, a final rating decision or Board decision may not be reopened and allowed, and a claim based on the same factual analysis may not be considered. 38 U.S.C.A. §§ 7104, 7105. Under 38 U.S.C.A. § 5108, however, "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."

Under 38 C.F.R. § 3.156(a), "new and material evidence" means evidence not previously submitted to agency decisionmakers which, by itself or in connection with evidence previously included in the record, "relates to an unestablished fact necessary to substantiate the claim." Such evidence must also "raise a reasonable possibility of substantiating the claim." 38 C.F.R. § 3.156(a) (2011).

Furthermore, the Court of Appeals for the Federal Circuit has indicated that evidence may be considered new and material if it contributes "to a more complete picture of the circumstances surrounding the origin of a veteran's injury or disability, even where it will not eventually convince the Board to alter its ratings decision." Hodge v. West, 115 F.3d 1356, 1363 (Fed. Cir. 1998).

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

Before his death, the Veteran had filed a May 1992 claim for service connection for acute leukemia that was claimed as being secondary to Agent Orange exposure. While the Veteran's claim was pending, the Veteran unfortunately passed away on May [redacted], 1992. Thereafter, in June 1992, the appellant filed an application for death benefits. An April 1994 decision letter denied the appellant's claim on the basis that the cause of the Veteran's death was not shown to have been related to his active duty service. The appellant subsequently filed and perfected a timely appeal of the April 1994 decision and the matter was eventually certified to the Board for its appellate consideration. An April 1999 Board decision denied service connection for the cause of the Veteran's death, and in so doing, concurred that the evidence did not show that the cause of the Veteran's death was related in any way either to his service-connected disabilities or to his active duty service. As explained in its decision, the Board expressly determined that the evidence did not show that the Veteran was exposed to herbicides during his active duty service. The appellant did not seek further appeal of the matter to the United States Court of Appeals form Veterans Claims (Court). Hence, the April 1999 Board decision is final. 38 U.S.C.A. § 7104.

At the time of the final April 1999 decision, the evidence of record included the Veteran's service treatment records, VA examination reports dated December 1975 and January 1976, post-service treatment records from the United States Air Force Medical Center dated January through May of 1992, autopsy report dated July 1992, and a VA medical opinion from Dr. J.K.B dated July 1998.

The appellant's currently pending request to reopen her claim for service connection for the cause of the Veteran's death was received by VA in January 2008. Although the appellant has not submitted any additional treatment records or other medical evidence in support of her request to reopen, VA did receive hearing testimony from the appellant and her niece's husband in August 2011. A transcript of those proceedings is associated with the claims file. Additionally, based upon the detailed assertions given at the hearing of the Veteran's service in Vietnam and presumed exposure to Agent Orange, the Board sought and has obtained a February 2012 independent medical expert's report that has also been associated with the claims file.

At the August 2011 Board hearing, the appellant testified that the Veteran served for three years in Vietnam at Ton Son Nhut. The appellant's niece's husband also testified that the Veteran often spoke of his experiences in Vietnam. Hence, the testimony provided by the appellant and her niece's husband provides new information concerning the Veteran's service in Vietnam, and therefore, the possibility that the Veteran was presumably exposed to Agent Orange during his active duty service. Hence, the Board finds that new and material evidence has been received to reopen the appellant's claim for service connection for the cause of the Veteran's death. This claim will next be addressed by the Board on a de novo basis, an action that will not prejudice the Veteran in light of the ultimate outcome. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).
III. Service Connection for the Cause of the Veteran's Death

The Veteran died on May [redacted], 1992. A death certificate identifies the primary cause of his death as being sepsis which was due to acute myelogenous leukemia (AML). Also of significance, lung infiltrates were noted as being a significant condition that contributed to the Veteran's death, but were determined as being unrelated to either the Veteran's sepsis or AML. A July 1992 autopsy report reflects confirmation of terminal bronchopneumonia with candida parasilosis and staph haemolyticus and AML involving the lung, brain, bone, and rectal fissure. The autopsy also revealed emphysema of the lungs bilaterally; hemosiderosis of the liver and spleen; mild steatosis of the liver; and spleen congestion.

As noted above, prior to his death, the Veteran had filed a claim for service connection for acute leukemia, secondary to Agent Orange exposure. This claim was never granted, however, as the Veteran died shortly after his claim was filed. At the time of his death, service connection was in effect for the Veteran for various other disabilities, to include: bilateral ureteralithiasis with urethral colic; deviated nasal septum; hemorrhoids; right knee torn medial meniscus with degenerative changes; and left clavicle fracture. The Board notes, however, that there is no evidence in the claims file that any of these service-connected disabilities are etiologically related to the Veteran's cause of death; nor does the appellant specifically assert that an etiological relationship exists between the Veteran's cause of death and his service-connected disabilities.

The appellant, who is the Veteran's surviving spouse, seeks entitlement to service connection for the cause of the Veteran's death based upon assertions, expressed in her claims submissions and at her August 2011 Board hearing, that the Veteran was exposed to herbicides during service in Vietnam, and, that such exposure resulted in the Veteran's AML. In a September 1993 statement, the appellant pointed out that, beginning in 1954, the Veteran had undergone multiple treatments during service for various lung-related problems. Notwithstanding the same, the appellant testified that she and the Veteran first became aware of the Veteran's illness in 1992, when the Veteran began to show a fever while vacationing in Washington, D.C. According to the appellant, the Veteran sought treatment shortly after returning home from vacation and passed away four months later.

Dependency and Indemnity Compensation (DIC) benefits are payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C.A. § 1310 (West 2002); 38 C.F.R. § 3.5 (2011).

A veteran's death will be considered as being due to a service-connected disability when the evidence establishes that the service-connected disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the Veteran, including, particularly, autopsy reports. 38 C.F.R. § 3.312(a) (2011).

The service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b) (2011).

A contributory cause of death is inherently one that is not related to the principal cause. In order for a service-connected disability to be determined as a contributory cause of a veteran's death for compensation purposes, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1) (2010); see also Gabrielson v. Brown, 7 Vet. App. 36, 39 (1994).

VA regulations provide that a veteran who had active military, naval, or air service in the Republic of Vietnam during the Vietnam War Era (beginning on January 9, 1962 and ending on May 7, 1975) shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 U.S.C.A. § 3.307(a)(6)(iii). In this case, the Veteran's DD Form 214 reflects that the Veteran's active duty service included periods of overseas service in the Philippines, but do not specifically indicate service in the Republic of Vietnam. Nonetheless, a review of the service treatment records reveals records from 1968 which bear date stamps that indicate that the Veteran was present and received treatment at Cam Ranh Bay, Vietnam. In view of this evidence, the Board finds that the Veteran's active duty service did include the performance of duties in the Republic of Vietnam during the Vietnam War Era. Hence, the Veteran is presumed to have been exposed to herbicides including Agent Orange during his active duty service. This presumption is not rebutted by any evidence to the contrary.

In instances where a veteran is shown or presumed to have been exposed to herbicide agents during service, service connection may be granted on a presumptive basis for the diseases listed under 38 C.F.R. § 3.309(e). See 38 C.F.R. § 3.307(a)(6)(ii). Although the diseases listed under 38 C.F.R. § 3.309(e) include various respiratory cancers and certain types of leukemia, it has never identified AML as being one of the specific disorders for which service connection may be presumed by virtue of herbicide exposure. While the appellant's request to reopen her claim was pending, effective from August 31, 2010, VA amended 38 C.F.R. § 3.309(e) to add all chronic B-cell leukemias (to include, but not be limited to, hairy-cell leukemia and chronic lymphocytic leukemia), Parkinson's disease, and ischemic heart disease to the list of diseases associated with exposure to certain herbicide agents. The Board notes, however, that AML, which is the specific type of leukemia at issue in this case, continues to be excluded from the provisions of 38 C.F.R. § 3.309(e). As such, 38 C.F.R. § 3.309(e) does not assist the appellant in this case and the cause of the Veteran's death may not be presumed to have resulted from in-service herbicide exposure.

Notwithstanding the above, the Board is still compelled to examine whether service connection for the cause of the Veteran's death may be granted on a direct basis. In this regard, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Also, service connection may be presumed for certain chronic diseases, including leukemia, which develop to a compensable degree within a prescribed period after discharge from service, although there is no evidence of such disease during the period of service. This presumption is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309(a) (2011). Also, while the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree. 38 C.F.R. § 3.307(c).

As pointed out by the appellant in her September 1993 statement, the service treatment records do reflect that the Veteran was treated during service on multiple occasions for respiratory complaints. These records, however, indicate that the Veteran's complaints were generally diagnosed and treated as sinusitis and upper respiratory infections. Overall, there is no indication in the service treatment records that the Veteran's respiratory complaints were associated with AML. Further, repeated annual examinations performed over the course of the Veteran's active duty service did not reveal any abnormalities of the Veteran's chest or lungs, nor did they show any clinical findings or reported symptoms that would appear to be relevant to AML. Moreover, to the extent that the appellant asserts that the Veteran's in-service respiratory complaints were a manifestation of his exposure to Agent Orange in Vietnam, the Board notes that documented in-service treatment for respiratory problems began in 1959; well before the Veteran's apparent service in Vietnam in 1968.

Post-service treatment records include United States Air Force Medical Center hospital and treatment records dated from January 1992 through July 1992. These records include January 1992 treatment records which indicate an initial AML diagnosis and that the Veteran was placed on an initial course of chemotherapy treatment. A February 1992 tissue study of bone marrow samples taken from the Veteran confirmed AML that was in apparent remission. The Veteran's AML apparently returned a short time later, however, as March 1992 treatment records show that the Veteran resumed chemotherapy treatment. The Board notes that these records do not offer any opinions relating the diagnosed AML to the Veteran's active duty service, including his presumed in-service exposure to Agent Orange.

Terminal hospital records dated from May 14, 1992 through May [redacted], 1992 indicate that the Veteran was admitted for complaints of fever, chills, and fatigue. Consultation with an infectious disease specialist and various medical and laboratory testing revealed likely neutropenic colitis. Throughout the Veteran's hospitalization, the Veteran demonstrated constant fever which spiked to 103 degrees. The Veteran's prognosis was determined as being very poor, and after consultation with the Veteran's family, supportive care was given to the Veteran until his death on May [redacted], 1992. 

As discussed above, the Veteran's death certificate identifies the Veteran's cause of death as being sepsis due to AML. An autopsy of the Veteran confirmed terminal bronchopneumonia with candida parasilosis and staph haemolyticus and AML involving the lung, brain, bone, and rectal fissure. The autopsy also revealed emphysema of the lungs bilaterally; hemosiderosis of the liver and spleen; mild steatosis of the liver; and spleen congestion. Once again, the autopsy report does not contain any opinions relating any of the above findings to the Veteran's active duty service.

In July 1998, VA referred this matter to Dr. J.K.B., Assistant Chief of Pulmonary and Critical Care at the VA medical center in San Francisco, California. In his report of that date, Dr. J.K.B. stated that he reviewed the claims file, which at the time of his opinion would have included the aforementioned service treatment records and post-service treatment records. Dr. J.K.B. opined that there is no relationship between the Veteran's pulmonary illnesses and his death from leukemia. Although he also acknowledged that the Veteran underwent treatment during service for various respiratory illnesses, including pleurodynia, bronchitis, sinusitis, and pneumonia, he determined that those illnesses bear no relationship whatsoever to the Veteran's death from leukemia and infection.

Pursuant to the Board's more recent request in December 2011, it has received a February 2012 opinion from an independent medical expert, Dr. H.A.D., Chief of Hematology-Oncology at the Medical University of South Carolina. In his report, which was prepared after a review of the claims file, Dr. H.A.D. acknowledges that Agent Orange contains dioxin, which is a known carcinogen. Nonetheless, he states that it is not possible to state either that Agent Orange did or did not contribute to cause the Veteran's AML because the cause of AML is unknown. In this regard, he points out that "there is currently no specific genetic signature that unambiguously identifies a cancer, such as AML, as dioxin (or Agent Orange) related." 

Upon careful and thorough consideration of the evidence of record, the Board finds that entitlement to service connection for the cause of the Veteran's death cannot be granted in this case. First, the Board notes that there is no evidence in the claims file that the Veteran's AML was manifested by symptoms any earlier than 1992, many years after the Veteran's separation from service. As such, service connection may not be presumed pursuant to 38 C.F.R. § 3.309(a).

Also, and as noted above, there is no evidence that the Veteran's in-service complaints of and treatment for sinusitis and upper respiratory infections are related in any way to his AML. Moreover, post-service hospital records do not establish that the AML that caused the Veteran's death was related to his presumed in-service Agent Orange exposure or in any other way to his active duty service. The only opinions of record are the negative opinions provided in July 1998 by Dr. J.K.B. and in February 2012 by Dr. H.A.D.

In instances where a medical professional has rendered the opinion that a finding cannot be rendered without resort to speculation, the United States Court of Appeals for Veterans Claims (Court) has held that VA is not required to proceed through multiple iterations of repetitive medical examinations until it has obtained a conclusive opinion or formally declares that further examinations would be futile. Jones v. Shinseki, 23 Vet. App. 382, 387 (2010). It must be clear, however, from some combination of the examiner's opinion and the Board's analysis of the record, that the examiner has not invoked the phrase "without resort to mere speculation" as a substitute for full consideration of all pertinent and available medical facts. Id. The Court noted that such a standard requires that the examiner's assessment be made after all due diligence has been exercised in seeking relevant medical information that may have bearing on the requested opinion. Id. at 389. Though a bald statement by the examiner that it would be speculative to render an opinion as to etiology or diagnosis is fraught with ambiguity, the Board may rely on an examiner's conclusion that an opinion would be speculative if such an opinion is supported by an explanation of the basis for such an opinion or is otherwise apparent in the Board's review of the evidence. Id. at 390. VA must also ensure that it is clear, from either the examiner's statements or the Board decision, that the examiner has considered "all procurable and assembled data" by obtaining all tests and records that might reasonably illuminate the medical analysis. Id. (quoting Daves v. Nicholson, 21 Vet. App. 246 (2007)). Thus, the examiner's use of the phrase "without resort to mere speculation" should reflect the limitations of knowledge in the medical community at large and not those of a particular examiner. Finally, the examiner should clearly identify precisely which facts cannot be determined.

Here, the conclusion expressed by Dr. H.A.D. in his February 2012 report that he is unable to state whether the Veteran's AML was or was not caused by Agent Orange exposure is explained by his statement that the medical community does not currently know the cause for AML. In this regard, there is no contrary information or evidence in the record which contradicts Dr. H.A.D.'s findings. Accordingly, as Dr. H.A.D.'s conclusion appears to reflect the state of the medical community's understanding of AML, no further elaboration is required from Dr. H.A.D. in this case. 

Notwithstanding the appellant's own beliefs, as detailed above, the Board is unable to attach probative weight to such assertions. As a general matter, a layperson is not capable of opining on matters requiring medical knowledge. See 38 C.F.R. § 3.159(a)(2); see also Routen v. Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally not capable of opining on matters requiring medical knowledge"). The Board acknowledges that, in certain circumstances, however, lay evidence may be sufficient to establish a medical diagnosis or nexus. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In particular, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot). These examples notwithstanding, a lay person is not competent to provide evidence as to more complex medical questions and, specifically, is not competent to provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); see also Routen v. Brown, supra.

The Board is sympathetic to the appellant's sincere belief that the Veteran's death was in some way related to Agent Orange exposure during his active duty service. Nonetheless, there is no indication in the record that she has received any medical training or has had medical experience sufficient to render her competent to render such an opinion. By contrast, the opinions provided by Dr. J.K.B. and Dr. H.A.D. fall within their respective medical expertise, and moreover, are not contradicted by any evidence in the claims file. Accordingly, the Board assigns significantly more probative weight to Dr. J.K.B. and Dr. H.A.D.'s opinions.

Based upon the foregoing, service connection for the cause of the Veteran's death may not be granted and this appeal is denied. In reaching this determination, the Board acknowledges that VA is statutorily required to resolve the benefit of the doubt in favor of the claimant when there is an approximate balance of positive and negative evidence regarding the merits of an outstanding issue. That doctrine, however, is not applicable in this case because the preponderance of the evidence is against the appellant's claim. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); 38 U.S.C.A. § 5107(b).




ORDER

New and material evidence has been received to reopen a claim for service connection for the cause of the Veteran's death.

Service connection for the cause of the Veteran's death is denied.




____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs