﻿Citation Nr: AXXXXXXXX
Decision Date: 05/07/19 Archive Date: 05/06/19

DOCKET NO. 180809-1664
DATE: May 7, 2019

ORDER

Service connection for obstructive sleep apnea is granted.

From July 11, 2013, to February 20, 2014, a higher rating of 30 percent for depressive disorder is granted.

From February 20, 2014, to July 11, 2018, a rating higher than 10 percent for depressive disorder is denied.

REMANDED

Entitlement to service connection for chronic bilateral shoulder pain, osteoarthritis, acromioclavicular joint, is remanded.

Entitlement to service connection for left upper extremity carpal tunnel with neuropathy, ulnar nerve pain and numbness (non-dominant), is remanded.

Entitlement to a disability rating in excess of 10 percent for retropatellar pain syndrome, right knee, with x-ray evidence of osteoarthritis, from October 25, 2012, to July 11, 2018, is remanded.

Entitlement to a disability rating in excess of 10 percent for retropatellar pain syndrome, left knee, with x-ray evidence of osteoarthritis, from October 25, 2012, to July 11, 2018, is remanded.

Entitlement to a disability rating in excess of 20 percent for degenerative disc disease with spondylosis C5-6, with history of herniated disc C5-6, with bilateral shoulder pain and headaches, from October 25, 2012, to July 11, 2018, is remanded.

Entitlement to a disability rating in excess of 20 percent for spondylosis with spondylolisthesis lumbar spine with degenerative disc disease, thoracic and lumbar spines, from October 25, 2012, to July 11, 2018, is remanded.

FINDINGS OF FACT

1. The Veteran’s obstructive sleep apnea is secondary to his service-connected mental health and lumbar spine disabilities.

2. From July 11, 2013, to February 20, 2014, the Veteran’s depressive disorder resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation).

3. From February 21, 2014, forward, the Veteran’s depressive disorder resulted in occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

CONCLUSIONS OF LAW

1. The criteria for service connection for obstructive sleep apnea as secondary to the service-connected mental health and lumbar spine disabilities are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

2. From July 11, 2013, to February 20, 2014, the criteria for a higher rating of 30 percent, but no higher, for depressive disorder are met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9434.

3. From February 21, 2014, forward, the criteria for a rating higher than 10 percent for depressive disorder are not met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.130, Diagnostic Code 9434.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Navy from October 1987 to June 1993. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a July 2018 RAMP rating decision. See 07/05/2018, Rating Decision.

The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. See 01/30/2018, Third Party Release of Information. Accordingly, the July 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested an opportunity to submit additional evidence, to be considered alongside the evidence considered by the Agency of Original Jurisdiction (AOJ) (the “Evidence Submission” review option in the RAMP selection form). See 08/09/2018, Statement in Support of Claim. 

Service Connection

Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and 

(3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Regulations provide that service connection is warranted for a disability which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Further, a disability which is aggravated by a service-connected disorder may be service connected to the degree that the aggravation is shown. Allen v. Brown, 7 Vet. App. 439, 449 (1995); 38 C.F.R. § 3.310(b). 

In order to establish entitlement to secondary service connection, there must be 

(1) evidence of a current disability; (2) evidence of a service-connected disability; (3) medical evidence establishing a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

1. Entitlement to service connection for obstructive sleep apnea.

The Veteran asserts that he has had sleep apnea since 1987. (He separated from service in October 1987.) Additionally, he has submitted a medical opinion from his VA psychiatrist, indicating that the Veteran’s obstructive sleep apnea is secondary to his service-connected depression and lumbar spine disability.

The AOJ made a favorable finding that private treatment reports show a diagnosis of obstructive sleep apnea with CPAP.

The question in this case is whether a causal relationship or nexus exists between the Veteran’s obstructive sleep apnea and his active service, to include as secondary to a service-connected disability.

The Board finds that a causal relationship or nexus exists. Favorable medical and lay evidence shows that the symptoms currently attributable to the Veteran’s obstructive sleep apnea are as least as likely as not secondary to his service-connected depression and lumbar spine disability.

In an August 2018 statement (timely submitted in the 90-day evidence window from the August 2018 notice of disagreement), the Veteran’s treating 

VA psychiatrist, Dr. C.M., indicated that the Veteran’s longstanding problems with depression and back pain are more likely than not to have led to his severe sleep issues, including chronic insomnia and sleep apnea. Dr. C.M. explained that the Veteran’s depression and back pain caused chronic insomnia, which in turn likely led to the weight gain that contributed to the Veteran’s obstructive sleep apnea. See 09/18/2018, Other, at 13. Dr. C.M.’s opinion is supported by a medical rationale. As the Veteran’s treating psychiatrist, he is expected to have a thorough understanding of the Veteran’s disability picture, to include his medical history. Thus, his opinion is entitled to much probative weight. 

Furthermore, Dr. C.M.’s opinion is consistent with lay evidence showing considerable weight gain since separation from service, plausibly associated with the physical limitations caused by the Veteran’s service-connected musculoskeletal disabilities, and medical evidence suggesting a causal relationship between the Veteran’s weight gain and his sleep apnea. See 08/02/2013, Buddy/Lay Statement; 01/22/2013, Medical Treatment Record - Non-Government Facility, at 9

In short, the preponderance of the evidence is in favor of finding that the Veteran’s sleep apnea is secondary to his service-connected depression and lumbar spine disability. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 3.310(a). The appeal is granted.

 

Increased Ratings

2. Entitlement to a disability rating in excess of 10 percent for depressive disorder, not otherwise specified, from July 11, 2013, to July 11, 2018.

The Veteran contends that he is entitled to a higher initial rating for his depressive disorder because he suffers from regular symptoms of mood disturbance (irritability) and chronic sleep impairment. See 09/18/2018, Other, at 5-6.

The AOJ found that the Veteran’s depressive disorder manifested as occupational and social impairment due to symptoms controlled by continuous medication, and depressed mood, and assigned a rating of 10 percent under Diagnostic Code 9434.

***

Evaluation of a mental disorder requires consideration of the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the capacity for adjustment during periods of remission. Evaluations will be assigned based on all evidence that bears on occupational and social impairment, rather than solely on an examiner’s assessment of the level of disability at the moment of the examination. The extent of social impairment shall also be considered, but an evaluation may not be assigned based solely on the basis of social impairment. 38 C.F.R. § 4.126. 

Percentage ratings for mental health disabilities are based on the criteria in the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130. 

The symptoms listed in 38 C.F.R. § 4.130 are not intended to constitute an exhaustive list but, rather, serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating for a mental disorder. 

Under General Rating Formula for Mental Disorders, a 10 percent rating is warranted for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

A 30 percent evaluation is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.

A 70 percent evaluation is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships.

A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closes relatives, own occupation, or own name.

The Board acknowledges that psychiatric examinations frequently include assignment of a global assessment of functioning (GAF) score. The American Psychiatric Association has released the Diagnostic and Statistical Manual of Mental Disorders (5th Ed.) (DSM-5), and 38 C.F.R. § 4.130 has been revised to refer to the DSM-5. The DSM-5 does not contain information regarding GAF scores. Effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders to remove outdated references to the DSM-IV and replace them with references to the DSM-5. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). VA adopted as final, without change, the interim final rule and clarified that the provisions of the final rule did not apply to claims that were pending before the Board, this Court, or the U.S. Court of Appeals for the Federal Circuit on August 4, 2014, even if such claims were subsequently remanded to the agency of original jurisdiction. See 80 Fed. Reg. 14,308 (Mar. 19, 2015). In Golden v. Shulkin, 29 Vet. App. 221, 225 (2018), the Court held that given that the DSM-5 abandoned the GAF scale and that VA has formally adopted the DSM-5, the Board errs when it uses GAF scores to assign a psychiatric rating in cases where the DSM-5 applies. This appeal was pending before AOJ on August 4, 2014. As such, the DSM-5 applies and the GAF scores will not be considered.

***

The Board finds that that Veteran’s depressive disorder manifested at a level of severity commensurate with a rating of 30 percent but only from July 11, 2013, 

to February 20, 2014. In contrast, from February 21, 2014, forward, his depressive disorder more closely approximated the level of occupational and social impairment contemplated by a rating of 10 percent.

VA treatment records show that the Veteran sought mental health treatment in November 2013. He reported sleeping difficulties, weight gain, a low level of energy, sadness, and irritability. He denied feelings of hopelessness or worthlessness, as well as suicidal ideation. He indicated that he worked in the mental health space and was seeing many symptoms of depression in himself. 

He expressed his desire to try an antidepressant and indicated that he was concerned about the effects that his depression could have on his marriage. 

See 01/10/2017, CAPRI, at 109. A February 2013 medication management note indicates that the Veteran was still experiencing sleep impairment. Id. at 107. 

A similar note from February 2014 reflects that the Veteran felt better; he was less irritable, and medication (trazodone) was working for sleep impairment. Id. at 106. Notes from November 2014, March 2015, and November 2016 show identical assessments. Id. at 66, 85 & 92. A January 2017 note indicates that the Veteran had mild problems with irritability, but no longer wanted to be on medication (trazodone). Id. at 1. There is no argument or indication that the Veteran has sought mental health treatment since January 2017.

The evidence above shows that, prior to February 21, 2014, the Veteran’s mental health disability manifested as depressed mood and chronic sleep impairment. These symptoms support a higher rating of 30 percent during this period. There is no argument or indication that the Veteran’s mental health disability has resulted in occupational and social impairment with reduced reliability and productivity due to symptoms such as the ones contemplated in the next available rating of 50 percent.

In contrast, the evidence for the period since February 21, 2014, indicates that the Veteran’s mental health disability improved. Significantly, VA treatment records show that medication provided effective treatment for the Veteran sleep impairment and he reported less irritability. Furthermore, the most recent treatment note from January 2017 shows that the Veteran requested that medication be discontinued. The Board finds that such evidence tends to show further improvement. The treating provider described the Veteran’s symptoms at the time as mild problems with irritability. The Board finds that such symptoms more closely approximate the criteria for a rating of 10 percent. The Board notes that there is no argument or indication that the Veteran’s mental health disability has resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks at any point since February 21, 2014, to warrant the next available rating of 

30 percent.

Finally, the Board acknowledges the Veteran’s assertion that a remand is necessary to provide him with a thorough and contemporaneous examination. 

See 09/18/2018, Other, at 6. The Board respectfully disagrees. While a VA examination has not been conducted in this case, the evidence of record, to include several years of VA treatment records, conveys enough information to adequately rate the Veteran’s mental health disability. As discussed above, VA treatment records provide a clear picture of how the Veteran’s disability picture has evolved during the rating period and include sufficiently detailed descriptions of the Veteran’s symptom to reasonably infer his level of occupational and social impairment during the relevant period. If the Veteran believes his symptoms have worsened since the November 2018 evidence widow closes, the Veteran is free to file a supplemental claim.

REASONS FOR REMAND

1. Entitlement to service connection for chronic bilateral shoulder pain, osteoarthritis, acromioclavicular joint.

The issue of entitlement to service connection for chronic bilateral shoulder pain, osteoarthritis, acromioclavicular joint, is remanded to correct a duty to assist error that occurred prior to the July 2018 RAMP rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained an October 2014 medical opinion prior to the July 2018 rating decision on appeal. However, this medical opinion does not provide an adequate rationale regarding whether the Veteran’s bilateral shoulder disability had its onset in service or is otherwise related to service.

The October 2014 VA examiner opined that the Veteran’s diagnosis of chronic bilateral shoulder pain, osteoarthritis, acromioclavicular joint, is less likely than not related to service. The examiner noted the Veteran’s history of neck pain radiating into his upper extremities, including his shoulders, but concluded that his current shoulder pain is separate from the referred cervical pain. Finally, he noted that the current shoulder disability was not diagnosed until after separation from service.

The October 2014 VA opinion does not show adequate consideration of the relevant evidence. Significantly, the examiner did not discuss service treatment records that show complaints of shoulder symptoms in service. See, e.g., June 1993 separation examination, in 06/19/2013, STR – Medical, at 2-3. Furthermore, the VA opinion contains a scant rationale for its conclusion that current symptoms are less likely than not related to service. Rather, the VA opinion relies solely on the absence of corroborating evidence to rule out a nexus.

2. Entitlement to service connection for left upper extremity carpal tunnel with neuropathy, ulnar nerve pain and numbness (non-dominant).

In July 2013, the Veteran raised the issue of service connection for a neurological disability affecting both upper extremities. He characterized this disability as carpal tunnel with neuropathy, and ulnar nerve pain and numbness in arms and fingers. See 07/11/2013, Fully Developed Claim. A November 2014 rating decision granted service connection for right upper extremity radiculopathy, compressive ulnar neuropathy and compression median neuropathy (dominant). See 11/03/2014, Rating Decision. Currently on appeal is whether service connection is warranted for a neurological disability of the left upper extremity. 

The July 2018 RAMP rating decision denied entitlement to service connection based on a finding that the Veteran does not have current neurological disability affecting his left upper extremity. See 07/05/2018, Rating Decision, at 9. There were no favorable findings identified. This decision appears to be based on a September 2014 VA examination report indicating that the Veteran has not been diagnosed with a nerve condition involving his left upper extremity. See 09/17/2014, C&P Exam, at 36-37.

The Veteran, through his attorney, asserts that the September 2014 VA examination report is premised on an inaccurate factual basis, as he has been diagnosed with a nerve condition in his left upper extremity. In support of this assertion, he has pointed to medical records showing complaints of symptoms in his left upper extremities. Significantly, an April 2014 private treatment note shows diagnoses of chronic left C6 radiculopathy, chronic neck pain and left upper extremity pain and paresthesias (secondary to C6 radiculopathy) with superimposed cervical facet arthropathy, and left median neuropathy at the wrist, improved. See 10/15/2014, Medical Treatment Record- Non-Government Facility, at 21. This evidence, which was received October 2014, is clearly at odds with the September 2014 VA examiner’s finding of no left upper extremity nerve condition. 

Based on the above, the issue of entitlement to service connection for left upper extremity carpal tunnel with neuropathy, ulnar nerve pain and numbness (non-dominant), is remanded to correct a duty to assist error that occurred prior to the July 2018 RAMP rating decision on appeal. As discussed, the Agency of Original Jurisdiction (AOJ) obtained a September 2014 VA examination. However, shortly thereafter, in October 2014, VA received private medical records that contradict the September 2014 VA examination and ultimately render it inadequate.

Additionally, the Board notes that, prior to the July 2018 RAMP rating decision on appeal, there was an indication of relevant outstanding private treatment records. Significantly, the abovementioned April 2014 private treatment note (from Dr. S.R. Ross) indicates that the Veteran was seen by Dr. S. Markey in neurological consultation in January 2014. Dr. S.R. Ross indicated that he had reviewed 

Dr. S. Markey’s “excellent note of 01/14/14.” He added that the Veteran was now scheduled to see Dr. Thompson at Memorial Hospital (regarding surgical treatment of his neck pain and left upper extremity complaints). See 10/15/2014, Medical Treatment Record - Non-Government Facility, at 17-21. The Board has reviewed the evidence, but found no record of the January 2014 consultation with Dr. 

S. Markey or any subsequent consultation with Dr. Thompson. A remand is required to obtain these records.

Finally, the Board notes that it is plausible that the April 2014 diagnoses of left 

C6 radiculopathy, chronic neck pain and left upper extremity pain and paresthesias (secondary to C6 radiculopathy) with superimposed cervical facet arthropathy, and left median neuropathy at the wrist, are the result of a redaction error, where the treating provider confused the Veteran’s left and right upper extremities. In this regard, the Board notes that the April 2014 treatment note references an October 2013 electrodiagnostic evaluation of both upper extremities, which appears to show right C6 neuropathy and mild median neuropathy at the right wrist. 

See 10/15/2014, Medical Treatment Record - Non-Government Facility, at 17-21. 

To the extent possible, the AOJ should attempt to clarify this possible discrepancy.

3. Entitlement to a disability rating in excess of 10 percent for retropatellar pain syndrome, right knee, with x-ray evidence of osteoarthritis, from October 25, 2012, to July 11, 2018.

4. Entitlement to a disability rating in excess of 10 percent for retropatellar pain syndrome, left knee, with x-ray evidence of osteoarthritis, from October 25, 2012, to July 11, 2018.

The issues of entitlement to a higher rating for the Veteran’s bilateral knee disability are remanded to correct a duty to assist error that occurred prior to the July 2018 RAMP rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained a March 2017 VA examination report prior to the July 2018 rating decision on appeal. However, this examination report did not adequately consider all of the Veteran’s symptomology associated with his bilateral knee disability. Significantly, the March 2017 VA examiner indicated that the Veteran did not report flare-ups and that his bilateral knee disability did not affect his ability to work, including standing, walking, or sitting. See 03/29/2017, C&P Exam.

In a September 2018 appellate brief, the Veteran’s attorney asserted that the findings of the March 2017 VA examination are inconsistent with the evidence of record, which according to the Veteran’s attorney shows that the Veteran has consistently suffered from severe and chronic pain in his knees and that his efforts to relieve this pain, which include medication, injections, and physical therapy, have been largely unsuccessful. The attorney provided a summary of the evidence that she contends supports her argument. See 09/18/2018, Other, at 6-9.

Thereafter, in an October 2018 statement, the Veteran submitted argument that disputed the March 2017 VA examiner’s finding that he does not suffer from flare-ups. He stated that the pain in his knee is chronic and there are times when flare-ups occur and the pain becames much worse. He added that at a recent outing his left knee became so painful that he had trouble walking. See 10/01/2018, Correspondence, at 3. 

After careful review of the evidence, the Board finds that the March 2017 

VA examination does not show complete consideration of all of the Veteran’s symptomology associated with his bilateral knee disability to enable a rating adjudciation at this time. Significantly, the VA examination is at odds with contemporaneous competent evidence showing flare-ups and functional impairment. Additionally, the examination does not show adequate consideration of any residuals related to the Veteran’s knee surgeries during the rating period. 

In this regard, the Board notes that the Veteran underwent right knee surgery on July 17, 2013, and left knee surgery on August 18, 2015. 

5. Entitlement to a disability rating in excess of 20 percent for degenerative disc disease with spondylosis C5-6, with history of herniated disc C5-6, with bilateral shoulder pain and headaches, from October 25, 2012, to July 11, 2018.

6. Entitlement to a disability rating in excess of 20 percent for spondylosis with spondylolisthesis lumbar spine with degenerative disc disease, thoracic and lumbar spines, from October 25, 2012, to July 11, 2018.

The issues of entitlement to higher rating for the service-connected back and neck disabilities are remanded to correct a duty to assist error that occurred prior to the July 2018 RAMP rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained a September 2014 VA examination report after the Veteran filed a claim in 2012 and prior to the July 2018 RAMP rating decision on appeal. However, this examination report did not adequately consider all of the Veteran’s symptomology associated with his back and neck.

In a September 2018 appellate brief, the Veteran’s attorney asserts that the September 2014 VA examination does not show adequate consideration of additional functional impairment due to the factors listed in 38 C.F.R. §§ 4.40, 4.45. When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Alternatively, the Veteran’s attorney asserts that the Veteran’s back and neck disabilities have worsened since the September 2014 VA examination. See 09/18/2018, Other, at 9-12.

The September 2014 VA examination shows significant limitation of range of motion for the back and neck. The examiner stated that the Veteran had functional loss and identified the contributing factors as less movement than normal, incoordination (only for neck) pain on movement, interference with sitting, standing, and/or weight-bearing (only for back), and lack of endurance. Regarding the Mitchell criteria, the examiner stated that it was not likely that the pain associated with a flare-up or with repetitive use over a period of time would significantly limit functional ability. See 09/17/2014, C&P Exam, at 3-15. 

The Board finds that the September 2014 VA examination does not show adequate consideration of the factors listed in §§ 4.40 and 4.45. In this regard, the Board notes that, in Sharp v. Shulkin, 29 Vet. App. 26 (2017), the United States Court of Appeals for Veterans Claims (Court) held that “for an examination to comply with § 4.40, the examiner must ‘express an opinion on whether pain could significantly limit functional ability’ and the examiner’s determination in that regard ‘should, if feasible, be portrayed in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups.’” Id. at 32 (citations omitted.). The Court also stated that it has “recognized circumstances in which an examiner’s conclusion that an ‘opinion is not possible without resort to speculation is a medical conclusion just as much as a firm diagnosis or a conclusive [medical] opinion.’” Id. at 32-33 (citing to Jones v. Shinseki, 23 Vet. App. 382, 390 (2010)). The Court stated that Jones “permits the Board to accept a VA examiner’s statement that he or she cannot offer an opinion without resorting to speculation, but only after determining that this is not based on the absence of procurable information or on a particular examiner’s shortcomings or general aversion to offering an opinion on issues not directly observed.” Id. at 33. 

In view of the Court’s expressions in Sharp, the Board finds that the September 2014 VA examination is incomplete. Significantly, the examination report is vague regarding the functional loss due to the factors listed §§ 4.40 and 4.45. 

A remand is required to correct this duty to assist deficiency.

The matters are REMANDED for the following actions:

1. Take appropriate action to obtain any outstanding private treatment records. In this regard, the Board notes that an April 2014 private treatment note (from Dr. S.R. Ross) indicates that the Veteran was seen by 

Dr. S. Markey in neurological consultation in January 2014. He added that the Veteran was now scheduled to see Dr. Thompson at Memorial Hospital (regarding surgical treatment of his neck pain and left upper extremity complaints). See 10/15/2014, Medical Treatment Record - Non-Government Facility, at 17-21. The Board has found no record of the January 2014 consultation with Dr. S. Markey or any subsequent consultation with Dr. Thompson. 

2. After completing #1, to include associating any records with the claims file, schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any current bilateral shoulder disability. The examiner is to provide an opinion whether any such disability is at least as likely as not related to an in-service injury, event, or disease. 

The opinion must show adequate consideration of service treatment records that show complaints of shoulder symptoms in service. See 06/19/2013 STR – Medical, 

at 3.

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered. If an opinion cannot be given without resorting to speculation, the examiner should explain why and state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), the record (additional facts are required), or the examiner (does not have the knowledge or training).

3. After completing #1, to include associating any records with the claims file, schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any current neurological disability affecting the left upper extremity. The examiner is to provide an opinion whether any such disability is at least as likely as not related to an in-service injury, event, or disease, or (1) proximately due to service-connected disability, OR (2) aggravated beyond its natural progression by service-connected disability. 

The opinion must show consideration of an April 2014 private treatment note, which shows diagnoses of chronic left C6 radiculopathy, chronic neck pain and left upper extremity pain and paresthesias (secondary to C6 radiculopathy) with superimposed cervical facet arthropathy, and left median neuropathy at the wrist, improved. See 10/15/2014, Medical Treatment Record-Non-Government Facility, at 21.

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered. If an opinion cannot be given without resorting to speculation, the examiner should explain why and state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), the record (additional facts are required), or the examiner (does not have the knowledge or training).

4. After completing #1, to include associating any records with the claims file, schedule the Veteran for an examination by an appropriate clinician to determine the current severity of his service-connected bilateral knee, lumbar spine and cervical spine disabilities. 

The examiner is to provide a full description of these disabilities and report all signs and symptoms necessary for evaluating the Veteran’s knees and upper/lower spine disabilities under the relevant rating criteria. 

The examiner must attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. To the extent possible, the examiner should identify any symptoms and functional impairments due to service-connected bilateral knee, lumbar spine and cervical spine disabilities alone and discuss the effect of these disabilities on any occupational functioning and activities of daily living. 

If it is not possible to provide a specific measurement, or an opinion regarding flare-ups, symptoms, or functional impairment without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

 

Paul Sorisio

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD P. López, Associate Counsel