﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/19 Archive Date: 09/27/19

DOCKET NO. 190315-4433
DATE: September 30, 2019

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for tinnitus is denied.

Entitlement to service connection for a lower right arm scar is denied.

Entitlement to service connection for Barrett's esophagus is stayed.

Entitlement to service connection for gastroesophageal reflux disease (GERD), to include as due to exposure to herbicide agents is stayed.

REMANDED

Entitlement to service connection for back pain with stiffness is remanded.

Entitlement to service connection for lumbar radiculopathy, left lower extremity is remanded.

Entitlement to service connection for right knee condition, to include medial meniscus tear, is remanded.

FINDINGS OF FACT

1. The Veteran’s bilateral hearing loss is not shown to be causally or etiologically related to service, and did not manifest in or within one year of his separation from service.

2. The Veteran’s tinnitus is not shown to be causally or etiologically related to service, and did not manifest in or within one year of his separation from service.

3. The preponderance of the evidence of record is against finding that the Veteran has had a lower right arm scar at any time during or approximate to the pendency of the claim.

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

2. The criteria for service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for service connection for a lower right arm scar have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from January 1965 to December 1968. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran selected the supplemental claim review lane when he submitted the RAMP election form in December 2018. A January 2019 RAMP rating decision considered the evidence of record at the time of that decision. The Veteran timely appealed the RAMP rating decision to the Board and requested direct docket review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

On July 1, 2019, the Secretary of Veterans Affairs directed the Board of Veterans’ Appeals (Board) to stay adjudication of all cases which may be affected by the Blue Water Navy Vietnam Veterans Act of 2019 (the Act), until the effective date of the Act, January 1, 2020. The Act creates new statutory requirements for the adjudications of certain claims based on veterans’ herbicide agent exposure in the offshore waters of the Republic of Vietnam during the period from January 9, 1962, to May 7, 1975, in or near the Korean Demilitarized Zone during the period from September 1, 1967, to August 31, 1971, and in Thailand during the period from January 9, 1962, to May 7, 1975. The issues listed as stayed in the Order section may be affected by the Act. Once the stay is lifted, adjudication of any stayed cases will be resumed in accordance with the Board’s docket order.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

1. Entitlement to service connection for bilateral hearing loss and tinnitus.

The Veteran contends his hearing loss and tinnitus are due to exposure to gunfire and loud engine noises from small boats, without hearing protection, in service.

Service personnel records show that the Veteran’s military occupational specialty was as a boatswain mate, which the AOJ has noted is highly probable for hazardous noise exposure. Therefore, the question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has current disabilities of bilateral hearing loss and tinnitus, and evidence shows that his in-service noise exposure has been established, the preponderance of the evidence weighs against finding that the Veteran’s diagnoses of bilateral hearing loss and tinnitus began during service or are otherwise related to an in-service injury, event, or disease. 

The Veteran’s service treatment records (STRs) are silent for any complaints, findings, treatment, or diagnoses of hearing loss or tinnitus. 

The Board notes that presumptive service connection for bilateral hearing loss or tinnitus is not warranted, as the record does not demonstrate that such disabilities were manifest to a compensable degree within one year of service separation. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

On a VA examination in February 2017, audiological testing confirmed that the Veteran had a hearing loss disability for VA purposes. 38 C.F.R. § 3.385. The Veteran reported he could not determine the time of onset of his hearing loss. He also reported constant bilateral tinnitus that had an onset years ago. He reported that in service he was exposed to noise from .50 caliber machine guns and ship engines, without hearing protection, and that for occupational and recreational noise exposure, he hunted with a rifle, shotgun, and pistol, with hearing protection. It was noted that the Veteran had a lot of ear infections and used dip. The VA examiner could not provide an opinion regarding the etiology of the Veteran’s hearing loss and tinnitus without resorting to speculation. For rationale, the examiner noted that STRs were silent for tinnitus, hearing was within normal limits at enlistment, and that at separation, whispered and spoken voice tests revealed normal hearing, but also acknowledged that whispered and spoken voice tests were not reliable evidence of either normal hearing or hearing impairment. The examiner noted that the Institute of Medicine (2006) has stated that if documentation of hearing loss or tinnitus at discharge from service is missing, it is nearly impossible to determine whether hearing loss or tinnitus detected by audiometric testing later in life is the result of noise exposure during prior military service, and that in the absence of audiograms obtained at the beginning and end of service, it is difficult or impossible to determine with certainty how much of an individual's hearing loss was acquired during service. The examiner, therefore, could not resolve the issue of etiology without resorting to mere speculation and explained that there was no valid hearing test obtained at separation, the Veteran had not provided any subjective reports that the onset of either his hearing loss or tinnitus was in service, and there were other potential etiologies, including aging, recreational noise exposure, middle ear pathology, and usage of nicotine. The examiner stated it would be speculative to allocate a portion of the Veteran’s current hearing loss and tinnitus to military noise exposure or to each of these other potential etiologies, and concluded that the etiology of the Veteran’s hearing loss and tinnitus could not be determined to a reasonable degree of certainty based on the evidence. 

The United States Court of Appeals for Veterans Claims (Court) has held that, when a medical examiner concludes that he or she is unable to provide a nexus opinion, this alone does not make the medical opinion inadequate; a medical opinion with such language may be adequate if the examiner sufficiently explains the reasons for this inability. Jones v. Shinseki, 23 Vet. App. 382 (2010). Here, as noted above, the examiner has explained specifically why he is not able to offer an opinion as to whether the Veteran's bilateral hearing loss and tinnitus are related to service, noting his history of both in-service and post-service noise exposure, no subjective report of the onset of either hearing loss or tinnitus in service, other potential causes, and the lack of documentation to determine the onset of such disorders. For these reasons, the Board finds the February 2017 VA examiner’s opinion, which was based on the complete record, is a "legitimate inconclusive opinion" and VA does not have to demand a conclusive opinion from the examiner. See Jones v. Shinseki, supra. Consequently, the VA opinion provides neither positive nor negative support for service connection. Fagan v. Shinseki, 573 F.3d 1282 (Fed. Cir. 2009). Thus, there is no medical opinion evidence linking the Veteran's bilateral hearing loss and tinnitus to service. 

As for the Veteran’s contentions, he is competent as a layperson to describe his symptoms of bilateral hearing loss and tinnitus. He is also competent to attest to noise exposure in service. However, the question of whether his current bilateral hearing loss and/or tinnitus is related to that in-service noise exposure is not capable of resolution by lay observation and requires medical testing and expertise to determine. As a lay person, the Veteran’s opinion as to the onset or etiology of hearing loss or tinnitus is not competent medical evidence. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Notably, the Veteran has not contended that he has had hearing loss and tinnitus continuously since service. Instead, he has contended that he developed hearing loss and tinnitus as a result of his in-service noise exposure and that those symptoms have never gone away. See, e.g., December 2016 VA Form 21-4138, Statement in Support of Claim. At the February 2017 VA examination, the Veteran also could not recall the onset of his bilateral hearing loss and reported that his tinnitus began many years ago, without indicating that it had its onset in service.

Given the above, the Board concludes that the preponderance of the evidence is against the claims for service connection for bilateral hearing loss and tinnitus, as such disabilities did not manifest in service or to a compensable degree within one year of separation from service, the record weighs against continuity of symptoms since service, and there is no competent evidence establishing a positive nexus. The benefit-of-the-doubt doctrine is not applicable, as there is no approximate balance of evidence. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to service connection for lower right arm scar.

The Veteran contends he has a lower right arm scar related to service. In conjunction with his claim, he submitted a statement describing this scar as troublesome and painful. See December 2016 VA Form 21-4138, Statement in Support of Claim. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

After reviewing the record, the Board concludes that the Veteran does not have a current diagnosis of a lower right arm scar and has not had one at any time during the pendency of the claim or recent to the filing of the claim. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

STRs show that in September 1965, the Veteran sustained a laceration wound to the lower part of his right arm when he reached for a tray of food and hit his arm on top of an open can. On separation examination in November 1968, a clinical evaluation revealed identifying body marks, scars, and tattoos, including “LS right forearm”. 

After service, however, VA treatment records dated from 2010 through 2018 show no report or finding of a lower right arm scar. 

At a December 2017 VA scars/disfigurement examination, the Veteran was provided an in-person examination wherein it was noted there was no visible scar on his right arm. During the examination, the Veteran also reported that the scar was no longer there. The examiner recorded the Veteran’s statement as, “It was a long time ago, it’s nothing to it. Scar doesn’t bother me. A friend of mine who is retired military helped me fill out my forms and said I should put it on there because it happened during service.” The examiner then noted there was no objective medical evidence to support the Veteran’s claim for a scar on the right arm, and a “normal diagnosis” was given. Notably, the Veteran has not reported or submitted any competent evidence to the contrary. Although he reported in December 2016 that he had a painful and troublesome scar, at the December 2017 VA examination, he clarified that he did not have a painful scar and explained that a friend had helped him complete that earlier form.

In conclusion, although the record establishes that the Veteran sustained a laceration wound to his right lower arm in service, it is not shown that he has any residual disability from that incident. As there is no evidence of a current disability, the cornerstone element of service connection has not been met, and service connection for a lower right arm scar is not warranted. Brammer v. Derwinski, 3 Vet. App. 223 (1992).

REASONS FOR REMAND

1. Entitlement to service connection for back pain with stiffness is remanded.

The Board finds that a remand is required to correct a duty to assist error that occurred prior to the Veteran’s election to enter the RAMP program 

The Veteran contends he injured his back in service in a motor vehicle accident (MVA), and that since then he has suffered from pain and limited range of motion, as well as pain that radiates down the left buttock and left lower extremity. 

STRs show that in April 1967, the Veteran was in an automobile accident and admitted to a civilian hospital for possible fracture of the spine. No spine fracture was found, and he returned to the ship a few days later. In May 1967, he reported severe back pain and requested he be admitted for work up for possible spinal injury. The impression was back strain. On a separation examination in November 1968, clinical evaluation of the spine was normal.

Post-service VA treatment records show that since at least 2010, the Veteran has been treated for chronic low back pain and limitations on range of motion. 

In February 2017, the VA examiner opined that the Veteran's current low back condition was not due to service, noting for rationale that although STRs showed he was in an MVA in 1967, and treated for back strain, subsequent STRs were silent for any chronic, recurring, or persisting low back complaints or abnormalities. The examiner explained that strains were episodes of acute pain associated with specific activities, which were generally transient and self-limited, responded to rest, time, and medication, and that each episode was a unique event, caused by different activities and at different times, and were not necessarily related to prior events, nor did they necessarily lead to a chronic condition such as arthritis or disc disease. The examiner concluded this appeared to be the case here since the medical record after the MVA in service was silent for chronic, persistent, or ongoing lower back complaints, and there was no objective evidence of continuity of lower back symptoms since separation that would provide a nexus between current lower back symptoms and service. The examiner then stated that because it had been 49 years since service, other intercurrent events could have played a role in the Veteran’s current lower back condition, including weight gain since service and the natural process of aging that occurs in all joints, but especially in the lower spine. 

On a VA examination in December 2017, the examiner opined the Veteran’s claimed low back condition (diagnosed as lumbosacral strain) was not related to service, noting for rationale that the Veteran was released from active duty in 1968 and the treatment and diagnosis of chronic lower back pain was in 2010, forty-two years later. Therefore, a chronicity of care was not established and a nexus was not established.

Once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303 (2007). After reviewing the February and December 2017 VA examination reports, the Board finds that the VA examiners’ opinions were based on erroneous findings that there was no objective evidence of continuity of lower back symptoms since service separation. It appears the VA examiners did not consider the Veteran’s competent reports of experiencing back symptoms, including pain and limitation of motion, since the MVA in service; rather, the VA examiners based their opinion, in part, on a finding that the treatment and diagnosis of chronic lower back pain was in 2010, years after separation from service, and a chronicity of care was not established. In light of this, the 2017 VA examination reports are inadequate, which is a pre-decisional duty to assist error, and, therefore, a remand is warranted. 

2. Entitlement to service connection for lumbar radiculopathy, left lower extremity, associated with back pain with stiffness, is remanded.

The Veteran contends his lumbar radiculopathy of the left lower extremity is associated with back pain and stiffness. Since a determination has not yet been reached on whether his back pain with stiffness is related to service, the decision on lumbar radiculopathy of the left lower extremity is deferred, as these matters are inextricably intertwined. Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

3. Entitlement to service connection for a right knee condition medial meniscus tear is remanded.

The Board finds that a remand is required to correct a duty to assist error that occurred prior to the Veteran’s election to enter the RAMP program 

The Veteran contends he has a right knee condition related to service. 

STRs show that in November 1966, the Veteran claimed he had a “trick right knee”. The next day he reported knee pain and it was noted he had a possible medial meniscus tear. In December 1966, the Veteran reported he still had pain in both knees. On the separation examination in November 1968, his lower extremities were evaluated as clinically normal.

In a statement received in December 2016, the Veteran reported that in service his knee became weak and bothered him as result of climbing in and out of boats, using shipboard ladders, and carrying heavy loads. He reported that a Navy doctor told him he had a medial meniscus tear. The Veteran stated that his right knee continued to bother him and became more painful every day. 

On a VA examination in December 2017, the diagnosis was right knee strain. The Veteran reported the onset of his right knee pain was after he fell down stairs during service. He stated his right knee felt like it was going to give out, walking long distances makes his knee hurt worse, and he experienced a decrease in normal activity. The examiner opined that the Veteran’s claimed right knee condition was not incurred in or caused by service. For rationale, the examiner noted a confirmed diagnosis of right knee condition, medial meniscus tear, during service. The examiner also noted that on the examination that day, there was a decreased range of motion, but stated there was no evidence showing a chronic disability during or after active service. The examiner also noted that an April 2010 right knee x-ray was normal. The examiner stated that although the Veteran had a right knee condition diagnosed during service there was also an extensive gap in care; therefore, it would be mere speculation to assume his right knee condition was service related.

After reviewing the December 2017 VA examination, the Board notes that although the VA examiner acknowledged that the Veteran had a current right knee condition and that a right knee condition was diagnosed during service, the examiner also noted there was an extensive gap in care and that to render an opinion would require speculation. In forming this opinion, however, it appears the VA examiner did not consider the Veteran’s competent report of experiencing knee symptoms since service. In light of this, the 2017 VA examination report is inadequate, which is a pre-decisional duty to assist error, and, therefore, a remand is warranted. 

The matters are REMANDED for the following actions:

1. Forward the Veteran's claims file to the December 2017 VA examiner for review and to provide a supplemental opinion. The examiner should review the claims file and be requested to provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran has a current back condition that had an onset in or was otherwise related to service, to include the MVA therein. The examiner must address the Veteran's contentions of having continuing symptoms of back pain and limitation of motion since the MVA in service. If the December 2017 VA examiner is not available, or is unable to offer the opinions sought, forward the claims file to another appropriate examiner for review and opinion. If it is determined that a physical examination is necessary, then such should be scheduled. The examiner should provide rationale for all opinions given, and if unable to provide the requested opinion without resorting to speculation, the examiner should so state and provide an explanation therefor.

2. Forward the Veteran’s claims file to the December 2017 VA examiner for review and to provide a supplemental opinion. The examiner should review the claims file and be requested to provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran has a current right condition that had an onset in or was otherwise related to service. The examiner must address the Veteran’s contentions of having continuing knee symptoms since service. If the December 2017 VA examiner is not available, or is unable to offer the opinions sought, forward the claims file to another appropriate examiner for review and opinion. If it is determined that a physical examination is necessary, then such should be scheduled. The examiner should provide rationale for all opinions given. If the examiner is unable to provide the requested opinion without resorting to speculation, the examiner should so state and provide an explanation therefor.

 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Casula, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.