Citation Nr: 1829584 
Decision Date: 06/18/18 Archive Date: 07/02/18

DOCKET NO. 16-55 212 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for traumatic brain injury (TBI).

2. Entitlement to service connection for headaches, to include as secondary to TBI.

3. Entitlement to service connection for dizziness, to include as secondary to TBI.


REPRESENTATION

Appellant represented by: James G. Fausone, Attorney


ATTORNEY FOR THE BOARD

Anthony Flamini, Counsel



INTRODUCTION

The Veteran served on active duty from June 1960 to October 1963.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a February 2015 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. Jurisdiction was subsequently transferred to the RO in Winston-Salem, North Carolina. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Veteran seeks entitlement to service connection for a TBI, as well as entitlement to service connection for headaches and dizziness, both to include as secondary to a TBI. Unfortunately, the Board finds that additional development must be undertaken before these claims can be adjudicated on the merits. 

The Veteran claims that he sustained a TBI while in service in January 1963 after running headfirst into a steel pole while playing basketball and rendering himself unconscious. The Veteran has indicated that he had experienced chronic frontal headaches since that time, and that he experiences headaches over the entire frontal area (although at times he experiences headaches on the right side more) approximately two to three times per week that are at times throbbing and accompanied by "light flashes." Further, the Veteran asserted that he also experiences dizziness, short-term memory loss, and frequent insomnia that he associates with his January 1963 head injury. 

A review of the Veteran's service treatment records confirms that he ran headfirst into a steel pole in January 1963. He was rendered unconscious for approximately 10 to 15 seconds and subsequently felt somewhat nauseated, although he did not vomit. Immediate examination was negative except for a laceration of his right forehead, which was sutured at that time. He was admitted to the U.S. Navy Hospital in Jacksonville, Florida, later that day after complaining of a mild, right frontal headache. He was diagnosed as having a unilateral brain concussion and placed in the ward for observation. The following morning, the Veteran complained of additional headache; he appeared alert and cooperative at that time, but soon thereafter seemed somewhat dazed. He was examined by the neurologist, at which time it was determined that he had some defects in the opening of his mouth, some hypesthesia of the right side of his face, and a slightly decreased corneal reflex on the right. It was determined that the Veteran had mild post-traumatic amnesia. The Veteran was placed on bedrest and was asymptomatic over the following five days; as such, he was discharged to full duty. However, approximately three months later, in April 1963, the Veteran sought treatment for an ache over his right eye and reported intermittent pain in his right eye ever since his January 1963 injury. The Veteran separated from service later that year in October 1963, at which time he was found to be within normal limits neurologically. 

The Veteran was provided with several VA examinations in December 2014. The examiner diagnosed the Veteran as having a remote closed head injury/concussion with no residuals. However, the examiner indicated that the Veteran's score on the Test of Memory Malingering (TOMM) fell considerably below expectation and raised serious concerns about whether he was putting forth his best effort on all other tests. The examiner indicated that this made it difficult, if not impossible, to validly interpret his other scores. The examiner also diagnosed the Veteran as having recurring headaches. 

However, with respect to the etiology of the Veteran's disorders, the examiner opined that:

Veteran had a remote close[d] head injury/concussion and frontal laceration on 01/23/1963 with no residuals as well documented in veteran's SMRs.

There was transient headache associated with initial injury. No documented chronic headache based on available entries after 01/1963 and separation physical was silent for any residuals.

SMRs/SS Form 502 shows that the veteran was admitted from 01/23/63-01/28/63 for "concussion" and "laceration". "While playing ball, ran head first into a steel pole. He was knocked out for some 10 to 15 seconds. Subsequently, he was somewhat nauseated but did not vomit..." "Examination on admission revealed a well-developed and nourished whi[t]e male in no acute distress, complaining of a mild, right frontal headache..." "A skull and chest x-ray examination were essentially negative...""On the morning following his admission, the patient complained of more headache, for which aspirin was prescribed. The patient appeared alert and cooperative, but soon thereafter seemed somewhat dazed. He was examined by the neurologist...The impression was that the patient had a post-traumatic amnesia of a mild degree...""The patient was placed at bed rest and vital signs, over the subsequent 48 hour, within a normal limit. By the following afternoon the patient's sensorium had completely cleared and there were no apparent sequelae. An EEG on 25 January 1963 was within normal limits. The patient remained asymptomatic until 28 January 1963. Therefore, it was felt he could be discharged to full duty, fit for same."

Medical literatures support that individuals with a history of TBI do not typically have lasting neuropsychological consequences and any subjective complaints are more likely associated with other psychiatric conditions.

In addition, the examining VA psychiatrist opined that any psychiatric disability was less likely than not incurred in or caused by an in-service injury, event or illness. In support of his conclusion, the VA psychiatrist stated that, "Although the veteran self endorsed symptoms of depression and anxiety his MMPI-2RF was invalid and uninterpretable due to over-reporting of symptoms. In addition, his SMR and treatment records do not support any mental health diagnosis."

As such, in an August 2017 Remand, the Board found that the Veteran should be provided with an additional examination to determine the nature and probable etiology of his current neurological symptoms. The Board noted that the Veteran was considered competent to report symptoms such as headaches following his January 1963 injury, and that the VA examiners must consider these lay statements when formulating their opinions. The Board additionally noted that the Veteran's credibility of continuity of symptomatology was bolstered by the April 1963 service treatment record in which he reported continued, intermittent headaches over his right eye since the January 1963 injury, a crucial piece of evidence that was not addressed by the December 2014 VA examiners when formulating their opinions. Thus, the August 2017 Remand explicitly directed the examiner to consider and discuss the Veteran's lay statements regarding a continuity of symptomatology since the documented January 1963 in-service head injury, and to also consider and discuss the April 1963 service treatment record in which the Veteran sought treatment for an ache over his right eye and reported intermittent pain in his right eye ever since his January 1963 injury.

Pursuant to the August 2017 Remand, the Veteran was provided with a VA headaches examination and a VA TBI examination in October 2017 as well as a VA PTSD examination in November 2017. However, in correspondence dated in February 2018, the Veteran's attorney suggested that these examinations were inadequate for several reasons, to include non-compliance with the Board's August 2017 Remand instructions. Crucially, the Veteran's attorney emphasized that the October 2017 examination failed to include any discussion of the Veteran's lay statements regarding continuity of symptomatology as well as any discussion of the April 1963 service treatment record in which the Veteran sought treatment for an ache over his right eye and reported intermittent pain in his right eye ever since his January 1963 injury. 

A remand by the Board confers on a claimant, as a matter of law, the right to compliance with the remand orders and provides that the Secretary of VA has a concomitant duty to ensure compliance with the terms of the remand. Stegall v. West, 11 Vet. App. 268 (1998). For the reasons articulated by the Veteran's attorney, the Board concludes that the RO did not substantially comply with the Board's remand directives, and an additional remand is required. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Schedule the Veteran for an appropriate VA examination to determine a confirmed diagnosis and etiology of his claimed TBI, to include any associated symptoms such as headaches and dizziness. The claims file should be made available to and be reviewed by the examiner. 

The examiner must consider and explicitly discuss the Veteran's lay statements regarding a continuity of symptomatology since the documented January 1963 in-service head injury. The examiner must also consider and discuss the April 1963 service treatment record in which the Veteran sought treatment for an ache over his right eye and reported intermittent pain in his right eye ever since his January 1963 injury.

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or greater) that any diagnosed TBI or residuals of TBI (to include headaches and dizziness) was due to service, to specifically include the documented January 1963 head injury and subsequent in-service treatment for headaches.

If there is no current diagnosis of a TBI and/or associated residuals, then the examiner is requested to discuss whether the previous diagnoses (such as the "mild neurocognitive disorder due to traumatic brain injury, without behavioral disturbance" diagnosed in the November 2017 VA PTSD examination) were proper and currently asymptomatic, or rather misdiagnoses. See McClain v. Nicholson, 21 Vet. App. 319 (2007).

If the examiner determines that the Veteran is malingering, then he/she should provide a summary of the level of malingering and the Veteran's actual level of symptomatology. 

All opinions expressed should be accompanied by a complete rationale. If any opinion cannot be made without resort to mere speculation, then the examiner must fully explain why such an opinion cannot be made without resorting to such speculation. See Jones v. Shinseki, 23 Vet. App. 382 (2010).

In formulating the opinion, the term "at least as likely as not" does not mean "within the realm of possibility." Rather, it means that the weight of the medical evidence, both for and against the claim, is so evenly divided that it is as medically sound to find in favor of the claim as it is to find against it.

2. Thereafter, review the examination report to ensure that it is in complete compliance with the directives of this Remand. If the report is deficient in any manner, then implement corrective procedures at once.

3. After completion of any additional development indicated, readjudicate the claims of service connection on appeal. If any of the benefits sought on appeal remain denied, then issue an appropriate supplemental statement of the case and provide the Veteran and his attorney the requisite period of time to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).