﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/19 Archive Date: 12/31/19

DOCKET NO. 190603-11020
DATE: December 31, 2019

ORDER

Entitlement to service connection for obstructive sleep apnea is granted.

Entitlement to service connection for right flat foot (pes planus) is granted.

Entitlement to service connection for left flat foot (pes planus) is granted.

Entitlement to service connection for right hip osteoarthritis with femoral acetabular impingement (claimed as a hip disability) is granted.

Entitlement to service connection for left hip osteoarthritis with femoral acetabular impingement (claimed as a hip disability) is granted.

FINDINGS OF FACT

1. The preponderance of the evidence of record supports a finding that the Veteran’s obstructive sleep apnea symptomology began during active service and continued through March 2015, when he was provided a formal diagnosis. 

2. Resolving reasonable doubt in the Veteran’s favor, his currently diagnosed right flat foot is related to the reported in-service overuse and strain. 

3. Resolving reasonable doubt in the Veteran’s favor, his currently diagnosed left flat foot is related to the reported in-service overuse and strain.

4. Resolving reasonable doubt in the Veteran’s favor, his currently diagnosed right hip osteoarthritis with femoral acetabular impingement is related to the reported in-service overuse and injuries.

5. Resolving reasonable doubt in the Veteran’s favor, his currently diagnosed left hip osteoarthritis with femoral acetabular impingement is related to the reported in-service overuse and injuries.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for obstructive sleep apnea have been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for entitlement to service connection for right flat foot have been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for entitlement to service connection for left flat foot have been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for entitlement to service connection for right hip osteoarthritis with femoral acetabular impingement have been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria for entitlement to service connection for left hip osteoarthritis with femoral acetabular impingement have been met. 38 U.S.C. §§ 1110, 1112, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 1985 to January 2012. 

These matters come before the Board of Veterans’ Appeals (Board) on appeal from initial January 2018 and May 2018 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO). In October 2018, the Veteran elected to participate in the modernized review system and requested that the issues on appeal be reviewed as supplemental claims. 38 C.F.R. § 19.2(d). His claims were denied in a March 2019 rating decision. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction. 

The Board notes that the Veteran’s service connection claims currently on appeal have been denied in previous final rating decisions. However, as the March 2019 rating decision made the favorable finding that new and relevant evidence had been submitted subsequent to these final denials, and the Board does not find there to be clear and unmistakable error with this determination, the Board will proceed to the merits of the Veteran’s claims. 

Service Connection

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). In general, service connection requires the following: (1) evidence of a current disability; (2) evidence of an in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Additionally, service connection for a chronic, undiagnosed illness (or a medically unexplained chronic multi-symptom illness such as chronic fatigue syndrome, fibromyalgia, or functional gastrointestinal disorders) arising from service in the Southwest Asia theater of operations during the Gulf War may be established under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

Bilateral Foot & Hip

The Veteran claims that entitlement to service connection for his bilateral foot and hip disabilities is warranted because these disabilities were caused by excessive overuse, strain, and by two incidents where he fell in service. Alternatively, he generally claims that these disabilities are caused by Gulf War Illness. A review of the medical evidence of record reflects current diagnoses of bilateral flat foot and osteoarthritis of both hips with bilateral femoral acetabular impingement; thus, the current disability elements for these claims have been established. 

Regarding an in-service incurrence, the Board notes that the Veteran’s service treatment records are silent for any reports of, or treatment for, bilateral foot or hip disabilities in service. However, in an April 2018 statement, he indicated that he was an aircraft electrician for 26 years, which required him to bend, twist, and put his body into a number of contorted positions to reach and repair wiring on planes, which caused hip pain. He also generally indicated that he began experiencing pain in his feet after spending up to 15 hours a day standing on the flight line or working on concrete surfaces. In an August 2018 statement, the Veteran further detailed two specific incidents in service where he injured his hips and feet. Specifically, while stationed at Patrick Air Force Base in 1986, he slipped off the wing of an aircraft, fell seven feet, and landed on his left hip. The second incident occurred when the Veteran was severing in Operation Desert Storm. He indicated that a missile fired during ground operations into a revetment next to him. He ran and jumped into a bunker, and later experienced pain radiating in his hips and feet. The Veteran indicated that he did not report these injuries because he was concerned with his primary missions and duties. 

Also of record is an August 2018 statement from the Veteran’s former immediate supervisor, P.L. He recalled one incident while serving in Saudi Arabia during Operation Desert Storm where a missile was launched into a revetment in close proximity to where the Veteran was finishing up on an aircraft system. He indicated that at the last moment, the Veteran left his plane and ran and dove into the banker. He witnessed the Veteran landing awkwardly and assumed that the Veteran was injured. 

Despite there being no indication of these injuries reported in service, the Board finds persuasive the Veteran’s lay statements, as they are corroborated by his former immediate supervisor. Thus, the Board finds the in-service incurrence element for these claims to be established. 

Regarding a nexus, the Veteran was provided a VA Gulf War General Medical Examination in October 2015. He reported bilateral hip and foot pain beginning in service in 2004, with subsequent progressive worsening pain. He was diagnosed with tendinopathy of the left hip. It was noted that it does not appear his right hip was examined. There was no diagnosis provided for the feet. Further, there was no direct service connection opinion provided in this examination. 

On February 2019 VA foot examination, the Veteran was provided a diagnosis of bilateral flat foot (pes planus). He reported pain in his feet beginning during service in the 1990s. On February 2019 VA hip examination, the Veteran was provided of diagnosis of bilateral hip osteoarthritis with femoral acetabular impingement. The VA examiner opined that there was insufficient evidence in the medical records to show that these disabilities were ongoing chronic conditions during service. Therefore, the VA examiner opined that it was less likely than not that these disabilities incurred in, or were caused by, an in-service injury, event, or illness. The Board notes that the VA examiner did not take into consideration lay statements of record from the Veteran and his former immediate supervisor regarding his reported in-service injuries. Accordingly, the Board does not afford this VA medical opinion significant probative weight. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). 

Also of record are two Disability Benefits Questionnaires (DBQs) completed by a private physician. In an April 2018 foot condition DBQ, the Veteran was provided a diagnosis of bilateral flat foot. He reported bilateral foot pain with numbness, tingling, and cramping. He reported bilateral foot pain beginning in 1992 while working 16-hour days with constant standing and working on concrete. The private physician opined that it is more likely than not that the Veteran’s bilateral foot disability is due to his frequent 16-hour work days with prolonged standing and working on concrete. The private physician reasoned that there were no reports of foot pain prior to enlistment. 

In an April 2018 hip condition DBQ, the Veteran was provided a diagnosis of bilateral osteoarthritis with femoral acetabular impingement syndrome. The Veteran reported bilateral hip pain resulting from working in small areas on planes while serving as an aircraft electrician from 1985 to 2004. He also reported an incident where he fell on his left hip while jumping to avoid a bomb in 1990 or 1991. He reported that the bilateral hip pain was aggravated by frequent running on uneven terrain while in the desert. The private physician opined that it is more likely than not that the Veteran’s bilateral hip disability was due to active service. The private physician specifically attributed the Veteran’s bilateral hip disability to the reported jump and fall in 1990/1991 and working in small areas on airplanes. The private physician opined that the hip disabilities were further aggravated by the frequent running on uneven terrain. 

In light of the foregoing, the Board finds that the due to the conflicting medical opinions, the evidence of record is at least in equipoise as to whether the Veteran’s currently diagnosed bilateral flat foot and bilateral hip osteoarthritis with femoral acetabular impingement are related to the injuries, overuse, and strain reported in service. Specifically, the Board finds the lay statements of record identifying an in-service injury to be competent and credible. Further, the Board notes that the February 2019 VA negative nexus opinions provided do not contain a sufficient rationale, and therefore are not probative enough to outweigh the April 2018 positive nexus opinions provided by the Veteran’s private physician. As such, giving the Veteran the benefit of the doubt, the Board finds that entitlement to service connection for bilateral flat foot and bilateral hip osteoarthritis with femoral acetabular impingement is warranted. The Veteran’s claims are therefore granted. 

The Board acknowledges that the Veteran has generally claimed that service connection for these disabilities is warranted as these disabilities are due to Gulf War Illness. However, as service connection is being granted on a direct basis, analysis under the provisions of 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 is not warranted. 

Obstructive Sleep Apnea 

The Veteran claims entitlement to service connection is warranted for obstructive sleep apnea because he developed sleep apnea symptomology in service. He has alternatively claimed that this disability is related to Gulf War Illness. A review of the medical evidence of record reflects that the Veteran was diagnosed with obstructive sleep apnea in March 2015; thus, the current disability element for this claim has been established. 

Regarding an in-service incurrence, the Board notes that the Veteran’s service treatment records are silent for reports of, or treatment for, a sleep apnea disability. There is a notation from May 1993 where the Veteran reported a sore throat and that he was having difficulty sleeping, however, these symptoms were attributed to an upper respiratory infection. 

While there is no notation of treatment in service, the Board notes that of record is a March 2018 statement from the Veteran’s spouse. Therein, she indicated that ever since they married in 1999, which was during the Veteran’s period of active service, she noticed her husband’s uncharacteristic sleeping routine where he would wake up gasping for air. She indicated that the Veteran always complained of being tired no matter how much restless sleep he got, and that he would often fall asleep while driving. 

Also of record is a March 2018 statement from P.L., who served with the Veteran from December 1985 to March 1991. P.L. identified himself as a VA registered nurse, with experience working alongside pulmonologists, and primary care, psychiatric, and emergency room physicians. He indicated that he was in the same unit as the Veteran and that they were deployed together to Saudi Arabia from August 1990 to March 1991 where they shared bunks/tents. P.L. indicated that he witnessed the Veteran snoring loudly and continuously throughout the night. He indicated that this snoring was interrupted by occasional snorting or choking sounds. He indicated that other times, during the pause in snoring, it appeared as if the Veteran was not breathing at all, causing welfare checks by someone in the tent. When aroused from this state, the Veteran would wake up frightened and gasping for air. He further indicated that despite the Veteran being an excellent aircraft maintainer, he often complained of fatigue. P.L. further indicated that in his 20-year medical career, he has personally screened hundreds of veterans for sleep apnea. In light of his experience, he opined that the signs and symptoms the Veteran displayed in service were textbook indicators of sleep apnea. 

On June 2015 Gulf War Illness VA examination, the Veteran was provided a diagnosis of obstructive sleep apnea. The examiner opined that it is less likely than not that the sleep apnea is related to a specific exposure event experienced by the Veteran during service in Southwest Asia. He reasoned that obstructive sleep apnea is a condition with a clear and specific etiology and diagnosis and that research published in peer-reviewed medical journals have not established a causal relationship between obstructive sleep apnea and exposure events experienced by service members in Southwest Asia. No opinion was provided regarding direct service connection. 

On February 2019 VA examination, the Veteran was again provided a diagnosis of obstructive sleep apnea. He reported experiencing snoring, difficulty sleeping, awakening gasping for breath, and episodes of stopped breathe dating back to the 1990s, which was confirmed by friends in service. He also experienced feeling tired the day after a night of sleep. He eventually had a sleep study, which confirmed obstructive sleep apnea. He notes that the Veteran’s symptoms have improved since CPAP use. Regarding a nexus to service, the VA examiner opined that it was less likely than not that the Veteran’s currently diagnosed obstructive sleep apnea was incurred in, or caused by, an in-service injury, event, or illness. The VA examiner reasoned that there is not specific enough information cited in the medical records to show that sleep apnea was an ongoing chronic condition during service. The Board notes that this examiner did not take into consideration lay statements of record from the Veteran’s spouse, and from P.L., who has medical experience, regarding the symptoms witnessed during service. Accordingly, the Board does not afford this VA medical opinion significant probative weight. See Jones v. Shinseki, 23 Vet. App. 382, 389 (2010). 

In light of the foregoing, the Board finds that entitlement to service connection for obstructive sleep apnea is warranted. Specifically, the Board finds the Veteran, his spouse, and P.L., competent and credible to identify sleep apnea symptoms witnessed in service, which continued until he was formally diagnosed in March 2015. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Further, the Board finds persuasive the positive nexus opinion provided by P.L. regarding the Veteran’s sleep apnea symptoms exhibited during service, as he has relevant medical experience. The Board finds these statements outweigh the February 2019 VA negative nexus opinion, which contains an insufficient rationale for the proffered opinion. 

The Board acknowledges that the Veteran has claimed that this disability was caused by Gulf War Illness. However, as service connection is being granted on a direct basis, analysis under the provisions of 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 is not warranted. 

Accordingly, as entitlement to service connection for obstructive sleep apnea is warranted, the Veteran’s claim is granted. 

 

 

M. Donohue

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. DeChiara, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.